UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80236-CIV-COHN/SELTZER

CAREY CHEN,

    Plaintiff,

v.

CAYMAN ARTS, INC., a Florida corporation
and SCOTT R. STEELE, an individual,

    Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Defendants Cayman Arts, Inc. and Scott R. Steele's Motion to Dismiss Amended Complaint and Supporting Memorandum of Law [DE 28] ("Motion"). The Court has considered the Motion, Plaintiff Carey Chen's Opposition [DE 47], Defendants' Reply [DE 53], Mr. Chen's Surreply [DE 60], and the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

On February 12, 2010, Plaintiff Carey Chen brought this action for a variety of claims relating to his employment with Defendants Scott R. Steele and Cayman Arts, Inc. ("Cayman"). Mr. Chen is a renowned marine life artist whose work is in great demand. Mr. Steele is the owner and principal of Cayman. Mr. Chen and Mr. Steele had a long-time friendship, in the course of which, Mr. Chen told Mr. Steele about certain companies, including Cayman Arts, LLC and Cayman Arts, LTD. In 2004, Mr. Steele purchased both companies and established Cayman Arts, Inc. ("Cayman").

On or about September 2004, Mr. Steele hired Mr. Chen to design artwork and

other marine life (angler) products for Cayman to sell. Around the same time, Mr. Steele sent Mr. Chen three documents in connection with the employment arrangement: an Employment Agreement, an Addendum to Agreement ("Addendum"), and a Trademark and Product License Agreement ("Licensing Agreement"), (together, "Agreements"). Under the Employment Agreement, Mr. Chen was to be paid $81,000 plus a bonus in exchange for his work. His bonus was to be paid on net annual profits above $100,000, and Mr. Steele promised that profits would exceed that amount.

Mr. Chen represents that even before hiring Mr. Chen, at the time Mr. Steele purchased the two companies, Mr. Steele made certain promises and representations to Mr. Chen. Specifically, Mr. Steele promised: (1) to actively promote Mr. Chen and Cayman, which would raise Mr. Chen's visibility and increase the sales and price of his work; (2) to open an office and gallery to serve as an art studio for Mr. Chen; (3) to grow the business significantly; (4) to make Mr. Chen, Cayman, and Mr. Steele large amounts of money; and (5) to invest significant money into Cayman.

After hiring Mr. Chen sometime around September 2004, Mr. Steele took the next two years to agree to a location for Cayman's headquarters. During that time, Mr. Chen did not have a gallery or studio to work and showcase his art. When the company eventually moved to the new location, Mr. Chen found the location was too small and impractical for the business. Meanwhile, according to the Amended Complaint, Mr. Steele, on behalf of Cayman, lost valuable opportunities for third parties to promote Mr. Chen's work by squandering Mr. Chen's chance to illustrate certain manuscripts about fishing and the seas, and by refusing an opportunity for Mr. Chen to paint a mural at an international tourist destination in the Dominican Republic.

Unhappy with his employment at Cayman, Mr. Chen resigned from his position on July 22, 2009, effective in October 2009. Mr. Chen contends that at the time his resignation was effective, Cayman should have ceased to hold itself out as Mr. Chen's employer. Yet instead, Cayman continued to operate a website featuring Mr. Chen's picture, displaying Mr. Chen's artwork, and using the address www.careychen2.com. The "front page" of the website contained text welcoming the viewer to "the Carey Chen collection" and describing Mr. Chen's experience. Though the "front page" was changed after this lawsuit was filed, Mr. Chen alleges that Cayman continues to mislead the public to believe that Mr. Chen is a Cayman employee.

Based on these facts, Mr. Chen's Amended Complaint brings 10 counts against Defendants: breach of contract (Count I); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1) (2006) (Count II); misappropriation of name and likeness pursuant to Florida Statutes § 540.08 (2007) (Count III); unfair competition (Count IV); recovery of overtime compensation (Count V); wages (Count VI); breach of implied covenant of good faith and fair dealing (Count VII); accounting (VIII); unjust enrichment (Count IX); and declaratory relief (X). On June 23, 2010, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On October 20, 2010, Defendants filed their related Motion for Sanctions [DE 62].

## II. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Amended Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Analysis

Defendants move to dismiss Counts II, III, IV, V, VIII, and X. In support of their Motion to Dismiss, Defendants state that the language in the Employment Agreement, Addendum, and Licensing Agreement negates Counts II, III, IV, and V, and that Mr. Chen fails to state a claim as to Counts III, IV, V, VIII, and X. In opposition, Mr. Chen explains that he has pled his claims in the alternative, depending on the execution and validity of the Agreements. Specifically, he states that Counts I, VII, and VIII are premised on the assumption that the Agreements were executed, while Counts II, III,

IV, and V are premised on the assumption that the Agreements were not executed and/or are not valid or enforceable. Opp'n at 6-7. In his Surreply, Mr. Chen suggests that these claims are not alternative, but rather supplemental claims. Surreply at 6.

As a preliminary matter, regarding the parties' initial confusion as to the existence of executed copies of the Employment Agreement and Licensing Agreement, see Opp'n at 2, the record now contains signed copies of these documents attached to Defendants' Counterclaim and Third Party Complaint [DE 51], see Countercl. and Third Party Compl., Exs. A [DE 51-1], B [DE 51-2], C [DE 51-3]. Nevertheless, the validity of the Agreements remains in dispute. See Opp'n at 3-4 (arguing Agreements are invalid due to Defendants' breach and repudiation, lack of consideration, and fraudulent inducement); see also Surreply at 4-5 (same). In evaluating Defendants' arguments for dismissal, wherever Mr. Chen has alleged the invalidity of the Agreements, the Court will read the facts in the Amended Complaint as true and accept all reasonable inferences therefrom, as the Court is required to do at the motion to dismiss stage. See Jackson, 21 F.3d at 1534.

### 1. The Effect of the Agreements on the False Designation of Origin, Misappropriation of Name and Likeness, Unfair Competition, and Overtime Compensation Claims
### (Counts II, III, IV, and V)

Defendants move to dismiss Mr. Chen's claims for false designation of origin, misappropriation of name and likeness, and unfair competition based on the terms of the Licensing Agreement. These claims center around Cayman's alleged wrongful use of Mr. Chen's name and likeness to sell his artwork and the company's other products. Though the Licensing Agreement grants Cayman a 20-year "exclusive license to use

the License Products, Trade Marks and Works in connection with the manufacture, design, development, marketing, advertisement, distribution, offering for sale, distribution and sale of the Licensed Products . . .," Licensing Agrmt. ¶ 2.1, and though the Licensing Agreement allows Cayman to request that Mr. Chen make personal appearances to promote and sell the licensed products, id. ¶ 7.1, the validity of the Licensing Agreement, especially after Mr. Chen's resignation, remains in dispute. Accordingly, at this time, the Court will not dismiss these counts on this basis.

Similarly, Defendants move to dismiss the recovery of overtime compensation claim as to Mr. Steele because Defendants read the terms of the Employment Agreement to prohibit this claim against Mr. Steele.  The Employment Agreement sates that it "is made between CAYMAN ARTS, INC., . . . and Carey Chen," Emp't Agrmt. at 1, but included in the Fair Labor Standard Act's definition of "Employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d) (2006).  This definition includes Mr. Steele because not only did he sign the Employment Agreement as President of Cayman, but also the Amended Complaint specifically alleges that "[a]t all times material, Steele acted in the 'interest of the employer.'" Am. Compl. ¶ 134.  Accordingly, at this time, the Court will not dismiss this count as it pertains to Mr. Steele.

### 2. Misappropriation of Name and Likeness
### (Count III)

Florida Statutes § 540.08 governs a claim for misappropriation of name and likeness.  Pursuant to § 540.08:

> No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait,

> photograph, or other likeness of any natural person without the express written or oral consent to such use given by: (a) Such person; or (b) Any other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness . . .

Fla. Stat. § 540.08(1). In the event that a person's name or likeness is used without consent, the person "may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages," id. § 540.08(2), but only if the use was not subject to an exception listed in the statute, see id. § 540.08(3).

Defendants contend that Mr. Chen's misappropriation of name and likeness claim should be dismissed because they only used Mr. Chen's name and likeness in connection with selling Mr. Chen's artwork, a use that falls within the § 540.08(4)(b) exception:

> The use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of . . . artistic productions or other articles of merchandise or property where such person has consented to the use of . . . his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof . . .

Id. § 540.08(4)(b); see also Tyne v. Time Warner Entm't Co., 901 So. 2d 802, 808 (Fla. 2005) (stating that this exception permits the promotion and advertisement of products by using the names and likenesses of artists whose works are being sold). Yet, Mr. Chen alleges that he demanded that Cayman cease such use, and that "[s]ince his resignation from Cayman Arts, Chen has never consented to the use of his name and likeness by Cayman Arts for any purpose." Am. Compl. ¶¶ 100, 101. Because the § 540.08(4)(b) exception only applies "where such person has consented to the use,"

Fla. Stat. § 540.08(4)(b), the exception may not apply here, as consent is a disputed issue. Accordingly, Mr. Chen's claim for misappropriation of name and likeness will not be dismissed at this time.

### 3. Common Law Unfair Competition
### (Count IV)

Defendants move to dismiss Mr. Chen's common law unfair competition claim on the grounds that this claim is duplicative of the false designation of origin and misappropriation of name and likeness claims. For the proposition that unfair competition claims should be dismissed when they do not allege additional facts other than those already pled in other causes of action, Defendants cite Teldar Communications Network, Inc. v. MCI Communications Corp., 46 F. Supp. 2d 1324, 1329-30 (S.D. Fla. 1999), rev'd in part and vacated in part by Teldar Comm. Network, Inc. v. MCI Comm. Corp., 228 F.3d 413 (11th Cir. 2000) (unpublished decision). However, Mr. Chen has alleged additional facts in this cause of action. His common law unfair competition claim pleads that Cayman's use of Chen's name and likeness is "likely to cause customer confusion," Am. Compl. ¶ 109, "Cayman Arts has knowingly and intentionally caused this customer confusion," id. ¶ 110, and "Chen competes with Cayman Arts for a common pool of customers," id. ¶ 111. Accordingly, Mr. Chen's common law unfair competition claim will not be dismissed as duplicative of his false designation of origin and misappropriation of name and likeness claims.

### 4. Recovery of Overtime Compensation
### (Count V)

The Amended Complaint alleges violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (2006), for improper deductions and unpaid overtime

8

compensation. Generally, wages must be paid "free and clear." 29 C.F.R. § 531.35 (2010); see also Brennan v. Veterans Cleaning Serv., Inc., 482 F.2d 1362, 1369 (5th Cir. 1973). This requirement "will not be met where the employee 'kicks back' directly or indirectly to the employer or another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. There is one statutory exception to the "free and clear" requirement, which provides that wages "include[ ] the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m) (2006); see also Brennan, 482 F.2d at 1369. Additionally, there are three judicially created exceptions, which allow paycheck deductions even when they reduce the net pay to below minimum wage when: "(1) the employee misappropriates the employer's money, (2) the employer makes a free and clear advance-a-loan to the employee, or (3) the employer pays a third party creditor at the employee's requests." Demezier v. Ravede Ins. Agency, Inc., No. 09-60777-CIV, 2010 WL 680837, at *1 (S.D. Fla. Feb. 18, 2010) (citing Brennan, 482 F.2d at 1369).

Mr. Chen alleges that "[o]n or about June 10, 2005, Steele (**not** Cayman Arts) made a personal loan to Chen in the amount of [$]17,000.00." Am. Compl. ¶ 120. "From approximately June 2005 through September 2009, **Cayman Arts**, a non-party to the loan transaction, deducted approximately $172.35 from Chen's bi-weekly paycheck in repayment of the loan made personally by Steele to Chen," id. ¶ 121, for a total deduction of approximately $18,786.15, id. ¶ 123. Combined with a $2,500 payment paid directly to Mr. Steele, Mr. Chen states that he "paid Steele approximately

$21,286.15 for repayment of the $17,000," id. ¶ 124, meaning that even after the loan was paid off, "Cayman . . . improperly deducted approximately $4,286.00 in excess of the total personal loan amount," id. ¶ 126.

Defendants contend that any deductions from Mr. Chen's paychecks were proper pursuant to two of the judicially-created exceptions to the rule that wages must be paid "free and clear": first, that the employer made a free and clear advance-a-loan to the employee, and second, that the employer paid a third party creditor at the employee's requests. In his Opposition, Mr. Chen argues that neither exception applies: first, the loan was not necessarily by "the employer," as this was allegedly a personal loan; and second, the Amended Complaint does not state that Mr. Chen requested that Cayman pay Mr. Steele. Under the alleged facts, it does not appear that either exception applies. Accordingly, Mr. Chen's claim for recovery of overtime compensation will not be dismissed at this time.

### 5. Accounting
### (Count VIII)

Under Florida law, a party seeking an equitable accounting must allege first, that a fiduciary relationship or a complex transaction exists, and second, that a remedy at law would be inadequate. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1071 (11th Cir. 2007). Defendants claim that Mr. Chen has failed to plead the necessary elements for the accounting claim, but the factual allegations in the Amended Complaint are sufficient.

First, the Amended Complaint alleges that Cayman and Mr. Chen had an agreement that Cayman would share a percentage of its annual net profits with Mr.

10

Chen, a responsibility Cayman "accepted . . . in a quasi-fiduciary capacity and under circumstances giving rise to the existence of trust among the parties." Am. Compl. ¶ 155. Second, the Amended Complaint suggests the complexity of the transaction involved in calculating Mr. Chen's bonus and demonstrates that a remedy at law could be inadequate here. See id. ¶ 156. Though the Agreements were contracts governing Mr. Chen's salary and bonus terms, and though he has alleged breach of contract, he may be unable to ascertain the amount of any potential damages without an accounting. For instance, Mr. Chen's bonus was supposed to be calculated based on net profit, and according to the Amended Complaint, "Cayman Arts has kept the books and records and denied Chen access to any financial information whatsoever which would show the manner in which Cayman Arts calculated Net Profits . . . Nor can Chen demonstrate whether or not Steele may have used Cayman Arts improperly to divert its revenue/profits to Steele personally (instead of to Chen as required by the Agreements), which Chen believes the books and records may reflect." Am. Compl. ¶ 156. Accordingly, the Court will not dismiss Mr. Chen's equitable accounting claim for failure to state a claim upon which relief can be granted.

### 6. Declaratory Relief
### (Count X)

Florida law requires that a party seeking declaratory relief must allege: "a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff; the plaintiff's doubt about the existence or non-existence of his rights or privileges; [and] that he is entitled to have the doubt removed." Floyd v. Guardian Life Ins. Co. of Am., 415 So. 2d 103, 104 (Fla. Dist. Ct. App. 1982); see also

El-Ad Residences At Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co., Nos. 09-CV-690723, 09-CV-60726, 2009 WL 3019786 (S.D. Fla. Sept. 23, 2009).

Defendants move to dismiss the declaratory relief claim on the grounds that Mr. Chen is not entitled to such relief. Mr. Chen has alleged that there is a bona fide dispute as to the parties' contractual and employment relationship, that he doubts the existence or non-existence of certain rights, privileges, duties, responsibilities, and liabilities under the Agreements, and that he is entitled to a declaration of his rights and duties to have this doubt removed. Accordingly, as Mr. Chen has adequately pled a claim for declaratory relief, the Court will not dismiss this count at this time.

## II. MOTION FOR SANCTIONS

On October 20, 2010, Defendants filed their Motion for Sanctions [DE 62] regarding Mr. Chen's Response to Order to Show Cause and Motion for Extension of Time [DE 46] and Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint [DE 47]. Mr. Chen filed his Opposition [DE 64] on November 8, 2010, and Defendants filed their Reply [DE 66] on November 15, 2010.[1]

The Motion for Sanctions is based on Mr. Chen's representation that he did not receive the Court's July 6, 2010 Order Granting in Part Motion to Withdraw and Motion for Extension of Time [DE 34] ("July 6th Order"). The July 6th Order directed Mr. Chen to retain new counsel or declare his intent to proceed *pro se* by July 27, 2010, and set an August 13, 2010 deadline for Mr. Chen to respond to the Motion to Dismiss.

---

[1] Defendants' Reply suggests that Mr. Chen's Opposition was filed "almost a week late on November 8, 2010." Reply in Supp. of Mot. for Sanc. at 1. The Court directs Defendants to Local Rule 7.1(c)(1)(A), pursuant to which, Mr. Chen's Opposition was not due until November 8, 2010. Accordingly, his Opposition was timely filed.

12

Because Mr. Chen's previous counsel included an incorrect home address for Mr. Chen, see Opp'n to Mot. for Sanc. ¶ 4, Mr. Chen states he did not receive the copy of the July 6th Order sent to the listed address and therefore did not know of the August 13th deadline for his Opposition to the Motion to Dismiss, id. ¶ 10. When he failed to respond, the Court issued an Order [DE 44] directing Mr. Chen to show cause by August 25, 2010 why the Motion to Dismiss should not be granted. Mr. Chen's new counsel filed a Response to Order to Show Cause and Motion for Extension of Time [DE 46] on August 25, 2010, explaining that Mr. Chen was unaware of the August 13th deadline. See Resp. to Order to Show Cause ¶ 4.

Defendants contend that Mr. Chen's representation must be fraudulent because he complied with part of the July 6th Order when he filed his notice to proceed *pro se* [DE 41]. However, Mr. Chen represents that he only knew of his obligation to file this notice through consulting with an attorney friend who failed to inform him of the August 13th deadline. Opp'n to Mot. for Sanc. ¶¶ 8-9. Though Mr. Chen did receive a copy of the July 6th Order from his previous counsel, the document was amongst a "large stack of papers." Id. ¶ 7. Mr. Chen did not know that the July 6th Order was included in the stack until after Defendants filed their Motion for Sanctions and Mr. Chen began assisting his new counsel in responding. Id. ¶ 11. The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys, and will, therefore, . . . liberally construe [such pleadings]." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (citations omitted). Since obtaining new counsel, Mr. Chen has not missed a deadline. Accordingly, the Court will not impose sanctions on Mr. Chen.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants Cayman Arts, Inc. and Scott R. Steele's Motion to Dismiss Amended Complaint [DE 28] is **DENIED**. Defendants shall file their Answer to the Amended Complaint [DE 22] no later than **December 6, 2010**. It is further

**ORDERED AND ADJUDGED** that Defendants' Motion for Sanctions [DE 62] is **DENIED**, and Defendants' request for an evidentiary hearing on the Motion for Sanctions, see DE 62 at 3 n.2, is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 24th day of November, 2010.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF