UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-CV-80236-Cohn/Seltzer

CAREY CHEN,

    Plaintiff,

vs.

CAYMAN ARTS, INC., a Florida corporation,
and SCOTT R. STEELE, an individual,

    Defendant(s).
_____/

## RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendants, CAYMAN ARTS, INC. ("Cayman"), a Florida corporation and SCOTT R. STEELE ("Steele"), by and through their undersigned counsel, hereby file the following Response to Plaintiff's Motion for Partial Summary Judgment [DE-63] (Plaintiff's "Motion") pursuant to Rule 56, Federal Rules of Civil Procedure and Rule 7.5, Local Rules for the Southern District of Florida:

## INTRODUCTION

On May 12, 2010 the Plaintiff, CAREY CHEN ("Chen") filed an Amended Complaint. [DE-22]. Count X of the Amended Complaint seeks a Declaratory Judgment under Florida Law (Florida Statute section 86.011) regarding his employment status and stating that the rights conferred by Chen upon Cayman by way of Exclusive Licensing Agreement constitute an improper restraint of trade. [DE-22: Page 25-27]. With respect to the Licensing Agreement, Count X specifically asks for a Declaration that: (a) the 20 year exclusive licensing agreement is invalid and unenforceable; (b) that Cayman has no

1

rights in any works created by Chen subsequent to the alleged termination of his employment with Cayman; (c) that Cayman has no rights in any works created by Chen prior to his employment with Cayman; and (d) the exclusive licensing agreement is invalid for indefiniteness of terms.   [DE-22: Page 26-27].[1]

Notably, the Complaint did *not* ask for a Declaration of Chen's rights with respect to the restrictive covenants contained in the Employment Agreement ("Employment Agreement") or Addendum.  The Employment Agreement's restrictive covenants include a non-solicitation clause of Cayman clients and customers, as well as a non-solicitation/piracy clause regarding Cayman's employees.  Those clauses have never been put in issue in this matter by the Plaintiff and are therefore outside the scope of the summary judgment analysis. [2]

Subsequently, on August 30, 2010, the Defendants filed a Counterclaim against the Plaintiff. [DE-51].  Count II of the Counterclaim asks the Court for a Declaration under Federal Law (28 U.S.C. § 2201) regarding Chen's employment status with Cayman.  [DE-51: Pages 9-10].   Count III of the Counterclaim asks the Court for a declaration of Cayman's intellectual property rights in all of Chen's past and future art

---

[1]    The Amended Complaint makes no reference to section 542.335, Florida Statutes ("Valid restraints of trade or commerce.").

[2]    If the non-solicitation clauses of the Agreement *are* in issue, the Plaintiff is still not entitled to a summary judgment as a matter of law.   The Declaration of Scott Steele raises mixed questions of law and fact as to, *inter alia*, whether the restrictive covenants are related to the preservation of Cayman's trade secrets.  If the non-solicitation clauses of the Agreement are related to Cayman's trade secrets, the presumptions set forth in section 542.335(1)(c), Florida Statutes, are not applicable to the facts of this case, and those clauses are subject to 542.335(1)(e), which makes any restrictive covenant based upon trade secrets reasonable which are less than five (5) years in duration.  The factual issue of a whether a trade secret exists, and whether the restrictive covenants in the Agreement are related to trade secrets precludes the entry of a summary judgment on these issues.

works under Federal Law (28 U.S.C. § 2201). [DE-51: Pages 10-12]. The Plaintiff (again) did not make the non-solicitation restrictive covenants an issue in their Answer and Affirmative Defenses to the Defendants' Counterclaim. [DE-58]. Similarly, the Plaintiff did not reference in any fashion section 542.335, Florida Stattues.[3] [DE-58: 7-9].

The Plaintiff has now prematurely requested a partial summary judgment on Count X of his Amended Complaint and Counts II and III of the Cayman's Counterclaim. [DE-63]. As a starting point, suffice it to say that the Plaintiff's Motion is legally deficient in myriad respects and must be denied. For example, the motion is utterly void of any supporting declarations, affidavits or testimonial support, and cites instead to records and documents attached to various pleadings, making it in essence a Rule 12(c) motion for judgment on the pleadings. As this Court is aware, district courts have applied a fairly restrictive standard in ruling on motions for judgment on the pleadings. Such a motion may not be granted "unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne v. MAC Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). (citations omitted); *see also Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996); *Walco Investments, Inc. v. Thenen*, 881 F. Supp. 1576, 1580 (S.D. Fla. 1995). To obtain a judgment on the pleadings, the moving party must clearly establish that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law.

---

[3] In fact, the *only* time section 542.335, Florida Statutes, was ever mentioned in the Pleadings was in the Plaintiff's sur-reply to the Defendants' Motion to Dismiss the Amended Complaint. [DE-60]. This was the first indication that the Plaintiff was improperly attempting to transform the exclusive license agreement into a restrictive covenant in order to bring it within the scope of section 542.335.

Moreover, the district court must view the facts presented in the pleadings, and all inferences drawn thereof, in the light most favorable to the non-moving party. Under that heightened standard, there is no conceivable way for Plaintiff to prevail.

Moreover, and as discussed more fully *infra*, Plaintiff seeks to apply a wholly inapplicable body of law (i.e., Florida's non-compete law) to the licensing agreement at issue, which *even if applied* would not allow for summary judgment because of genuine disputes regarding material facts. The gist of Plaintiff's (strained) argument seems to be that because the Trademark and Product License Agreement was incorporated by reference into the Employment Agreement, the clauses set forth therein become "restrictive covenants" subject to analysis under Florida law and specifically section 542.335, Florida Statutes. [DE-63: Pages 6-14]. In other words, Plaintiff's contention is that the negotiated, agreed-upon royalty provision in the Trademark and Product License Agreement constitutes a "restrictive covenant" subject to analysis under section 542.335. [DE-63: Pages 14-15]. This argument fails, as Plaintiff's position misapprehends applicable law in at least two fundamental respects. First, Florida law – and specifically section 542.335, Florida statutes ("Valid restraints of trade or commerce.") – does not apply to what is essentially a copyright license dispute; instead, federal Copyright law preempts, which precludes summary judgment under the Florida statute. Second, even assuming *arguendo* that Florida law does apply, the "restrictive covenant" reasonableness analysis is highly fact-intensive and involves many genuine disputes of material fact, which similarly precludes summary judgment.

The Plaintiff's remaining *fact-sensitive* contentions are: (a) that the exclusive licensing agreement was not supported by adequate consideration [DE-51: Pages 15-21]

4

and; (b) the Agreement and Trademark and Product Licensing Agreement were terminated. [DE-51: Pages 17-18]. There are genuine disputes of material fact on those contentions as well, which precludes entry of a summary judgment in favor of Chen.

## ARGUMENT

### Plaintiff's Motion for Partial Summary Judgment Must be Denied

As explained more fully *infra*, Plaintiff's Motion is premature, relies almost exclusively on inapplicable law, ignores myriad genuine disputes of material fact,[4] and therefore must be denied.

### I. Plaintiff's Motion for Partial Summary Judgment is Premature

Although only approximately ten months old, this matter has involved numerous appearances and withdrawals of various counsel, a temporary *pro se* Plaintiff, virtually no discovery has occurred (e.g., not a single deposition has been taken), and there are three third-party defendants (Fisher Blue Water Galleries, Monique Comfort, and Gray Ingram) who are in the process of being served with a Third-Party Complaint and

---

[4] We note that effective December 1, 2010, the language of Rule 56 was amended to read, "The court shall grant summary judgment if the movant shows that there is no genuine *dispute* as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (emphasis added). Given that this is a recent change, and given that Plaintiff filed its motion under the prior "genuine issue of material fact" standard, we necessarily cite to cases applying the earlier standard.

discovery requests.[5]  Moreover, Cayman's Answer to allegations in Count X of the Amended Complaint – one of the three counts subject to Plaintiff's Motion for Partial Summary Judgment – is not even due until December 6, 2010 (see DE# 69).[6]  Therefore, aside from the fact that Plaintiff offered virtually no evidentiary support for his motion, and in light of the almost complete lack of discovery, seeking summary judgment at this juncture is premature.[7]  *See DeJesus v. Emerald Coast Connections of St. Petersburg, Inc.*, 2010 U.S. Dist. LEXIS 43479, at *2 (M.D. Fla. May 4, 2010) ("The Court agrees that Defendants' motion for summary judgment should be denied as premature.").  The Eleventh Circuit has decisively determined that "summary judgment may only be decided upon an adequate record." *Snook v. Trust Co. of Ga. Bank*, 859 F.2d 865, 870 (11th Cir. 1988).  Here, there is plainly not an adequate record sufficient to support summary judgment.  *See also Longariello v. School Bd.,* 1996 U.S. Dist. LEXIS 21661 (S.D. Fla. September 16, 1996) (denying summary judgment as premature and noting that the parties had not served interrogatories, requests for admission and had taken no depositions; moreover, the court noted, neither the Plaintiff's self-serving and conclusory affidavit, nor the "pleadings themselves," nor the "176 documents" relied upon by the Plaintiff provided a basis as a matter of law.).  This is that case, as is evidenced by

---

[5]  It is anticipated that a motion for an amended scheduling order will be filed imminently.

[6]  We note that until last week, Plaintiff's Amended Complaint, including Count X, was subject to a fully-briefed motion to dismiss.  The Court's Order denying the motion was recently issued on November 24, 2010.  [DE-69].

[7]  As discussed more fully infra, Count X also involves numerous disputed issues of material fact, which would also make summary judgment inappropriate.

Plaintiff's failure to even bother submitting a Declaration in support of his motion. Therefore, summary judgment is premature and must be denied.

## II. Plaintiff Relies on Inapplicable Law and Ignores Genuine Disputes as to Material Facts

### A. Standard of Review

Effective December 1, 2010, Rule 56(a) provides that, "The court shall grant summary judgment if the movant shows that there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law." *Id.* (emphasis added). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." *Id.*

Under the prior standard, and the standard in effect when the Plaintiff filed his motion, Rule 56(c) provided that summary judgment may be granted for the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any remaining issue of fact is immaterial for summary judgment purposes. The moving party has the burden of establishing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met that burden, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Carrett*, 477 U.S. 317, 324 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence

7

presented, could find for the non-moving party. *See Anderson*, 477 U.S. at 247-51. The Court must construe the evidence presented in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson* at 255. A non-movant may not defeat a motion for summary judgment with a mere scintilla of evidence. *Id.* at 252. Disputed issues of non-material fact do not foreclose summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (emphasis in original); *accord Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

In his motion, Plaintiff suggests that, "In real[i]ty, there are no material facts in dispute and Mr. Chen is entitled to summary judgment in his favor as a matter of law because the agreements at issue are unenforceable and invalid for a multitude of reasons." [DE-63: Page 2]. Plaintiff is wrong, as the agreements are valid and enforceable. In any event, as explained more fully *infra*, and as elucidated in both Cayman's "Statement of Material Facts" and the "Declaration of Scott R. Steele" (both of which are being filed contemporaneously with this response), there are numerous, genuine disputes as to material facts, and under either the current or former standard of review, Plaintiff's motion must be denied.

8

### B. Key Issues of Disputed Fact That Preclude Summary Judgment

There are at least three key issues that are genuinely disputed in this case, all of which preclude summary judgment as a matter of law. These include, *inter alia*, whether the 20 year licensing agreement is valid and enforceable (which is actually a mixed question of fact and law), whether Chen was a Cayman employee, and whether there was consideration for the agreements.

#### i. Is the Licensing Agreement Valid and Enforceable?

Both Count X of the Amended Complaint and Count III of the Counterclaim seek a declaration regarding the status of the intellectual property rights at issue. Suffice it to say that there is intense disagreement between the parties on this issue. What is undisputed, however, is that Chen voluntarily agreed that, "regardless of termination, Employee shall remain bound by the provisions describing the Trademark and Licensing Agreement described in Section 3, herein." [DE-51-1: Page 3: Paragraph 10]. Thus, whether or not the Trademark and License Agreement is valid and enforceable is at the very core of this proceeding.

#### a. Federal Preemption Precludes Summary Judgment

The Plaintiff has not introduced any record evidence, including a Declaration from Chen (or anyone for that matter), which supports the proposition that a royalty provision of an exclusive licensing agreement is a restrictive covenant under Florida law. Most conspicuously, the Plaintiff has not cited to *any* case law which stands for the proposition that the royalty provisions of an exclusive licensing agreement for copyrighted art work is a restrictive covenant subject to scrutiny under section 542.335. At most, the Plaintiff has presented a hodgepodge of general contract law, and attorney

argument, to try to bolster the novel argument that an exclusive licensing agreement is a restrictive covenant for purposes of Florida non-compete law. In other words, the Plaintiff is trying to fit a square peg into a round hole (apparently in an attempt to obtain the perceived protections of section 542.335), and this cannot stand.

That being said, what is clearly not in dispute in this case is that the ultimate subject matter of the licensing agreement are the graphic works of art fixed in a tangible medium and created by Chen. As such, the agreement is governed by and subject to federal Copyright law (Title 17), and namely the Visual Arts Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A. Pursuant to 17 U.S.C. § 301 (part of the "Copyright Act"), all state law causes of action regarding intellectual property rights arising under the Copyright Act, in general, and VARA, are preempted by Federal Law, including state declaratory judgment actions. *See id.*; *see also Utopia Provider Systems, Inc., v. Pro-Med Clinical Systems, LLC*, 596 F.3d 1313 (11th Cir. 2010) (noting that, "The Copyright Act preempts legal or equitable rights [under state law] that are equivalent to any of the exclusive rights within the general scope of copyright . . . .) (citing U.S.C. § 301(a)).

Significantly, 17 U.S.C § 201 specifically deals with the ownership and transfer of copyrights, including works for hire; 17 U.S.C. § 203 specifically deals with the termination and transfers of licenses; and 17 U.S.C. § 204 specifically deals with the execution of transfers of copyright ownership. Thus, all of the issues in this matter regarding the exclusive licensing agreement arise under and are controlled by the Federal Copyright Act. It belies explanation as to how the Plaintiff can argue that section 542.335, Florida Statutes, supersedes federal copyright law. The Plaintiff's motion and

memorandum of law (and cited authorities) unsurprisingly fail to provide an adequate answer to that question.

As a general proposition, construction of contracts as between employer and employee involving ownership of copyrights under 17 U.S.C. § 201 must receive construction under federal copyright law, as opposed to the application of state law. *See S.O.S., Inc. v. Payday, Inc*. 866 F.2d 1081, 1088 (9th Cir. 1989). Specifically, if there are issues as to whether the works are a "work for hire" and owned by the employer, state law questions are preempted by federal copyright law. *See Dumas v. Gommerman*, 865 F.2d 1093, 1097 fn. 8 (9th Cir. 1989) ("[r]elevant factors will be such things as (1) whether the artist worked in his or her own studio or on the premises of the buyer; (2) whether the buyer is in the regular business of creating works of the type purchased; (3) whether the artist works for several buyers at a time, or exclusively for one; (4) whether the buyer retains authority to assign additional projects to the artist; (5) the tax treatment of the relationship by the parties; (6) whether the artist is hired through the channels the buyer customarily uses for hiring new employees; (7) whether the artist is paid a salary or wages, or is paid a flat fee; and (8) whether the artist obtains from the buyer all benefits customarily extended to its regular employees. While the degree of control and input exercised by the buyer may be relevant to an inquiry into joint authorship, it will not ordinarily be relevant in determining the employment status of the artist, just as this factor is not relevant in distinguishing between, for example, in-house and outside counsel."). Thus, the presence of the factual issues of the determination of ownership under these circumstances precludes the entry of a summary judgment. *See Gilpin v. Siebert*, 419 F.Supp.2d 1288, 1295-96 (D. Or. 2006).

11

State law is also preempted by federal copyright law when the issues are the transfers and execution of copyright ownership under 17 U.S.C. §§ 201, 204, and the termination of copyright licenses under 17 U.S.C. § 203. *See*, *generally, Latin American Music Co., Inc. v. Arch., San Juan Cath. Church*, 499 F.3d 32 (1st Cir. 2007), *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993).

Most importantly exclusive copyright licenses can have a portion that is executed (or performed) and a portion that is executory (to be performed in the future) under these sections of the Federal Copyright Act. *See generally*, *Korman v. HBC Florida , Inc.*, 182 F.3d 1291 (11th Cir. 1999), *Chambers v. Time Warner, Inc.*, 123 F.Supp..2d 198 (S.D.N.Y. 2000), *Reinhardt v. Wal-Mart Stores, In*c., 547 F.Supp.2d 346 (S.D.N.Y. 2008). Commentators have suggested, upon the invitation of the Copyright Office seeking comment, that these provisions of the Federal Copyright Act apply to circumstances where an artist of some nature enters into a contract which is part executed and part executory for future works to be completed during the term of the license.[8] *See*, *The sole right . . . shall return to the Authors: Part III Transitional Issues*, Prof. Jane C. Ginsberg, Columbia University School of Law (The Media Institute April 14, 2010).

Therefore, the Plaintiff cannot be entitled to any relief under sections 86.011 or 542.335, Florida Statuts, or Florida Law in general, regarding the respective intellectual

---

[8] As will be established through expert testimony, an exclusive license for an artist of any type, performer, graphic artist, sculptor, painter, author, or singer with a promoter or publisher includes an executory portion for future works within the term of the Agreement. The Plaintiff has not come forward within the scope of this motion for summary judgment with any evidence, declaration or expert testimony that such executory licensing agreements are unreasonable. Under the established procedure for summary judgments, the Defendants do not have duty to present any rebuttal declarations, evidence or expert testimony until such time as the Plaintiff has clearly establish the non-existence of a genuine issue of material fact. This is presented by way of a proffer to demonstrate to the Court that the pending motion is extremely premature.

property rights of Chen and Cayman under the exclusive licensing agreement. Therefore, the Plaintiff is relying on inapposite law, and summary judgment must be denied.

### b. Genuine Disputes of Material Fact Preclude Summary Judgment

The futility of Plaintiff's position is belied by his central argument that, "Defendant cannot demonstrate that the restrictive covenants they seek to enforce . . . are in any way reasonable in duration, area or line of business, and in fact are presumptively unreasonable under section 542.355, Fla. Stat. Defendants likewise cannot establish that they have any legitimate business interest in restricting Mr. Chen . . . . This is particularly true given the undisputed fact that Cayman Arts has abandoned its business, ceased operations and exists solely for the purpose of liquidating its substantial inventory of existing works created by Mr. Chen." [DE-63-2].

Under Federal Copyright Law, an exclusive copyright licensing agreement is presumed to be reasonable if it is less than 35 years in length. *See* 17 U.S.C. §§ 201, 203, 204 and 205. In the case of licenses which have an executory component, some commentators have suggested that the copyright vests to the licensee when it created, and the license can date 35 years from that date. *See, "The sole right . . . shall return to the Authors: Part III Transitional Issues,"* Prof. Jane C. Ginsberg, Columbia University School of Law (The Media Institute April 14, 2010). In the case at bar, Cayman only has a right to executory works of Chen for an absolute period of 20 years. In any event, a determination of whether this is reasonable or not must be made under the Federal Copyright Act, not state law.

Even assuming *arguendo* that the Licensing Agreement could be analyzed as a "restrictive covenant" under Florida law, Plaintiff's self-serving, conclusory statements

13

regarding "reasonableness" and Cayman's purported "lack of a legitimate business interest" fall far short of entitling him to summary judgment. Instead, any such analysis would be a highly fact-based inquiry involving fundamentally contested issues of material fact, which necessarily precludes summary judgment in this case.

For example, the threshold issue of whether Cayman has a "legitimate business interest," and the covenant's "reasonableness" and "scope" are questions of fact under Florida law. According to Plaintiff's Motion, "While Mr. Chen has not engaged in any conduct that would violate these restrictive covenants, they are nevertheless invalid and unenforceable because – as discussed further below – Cayman arts lacks any present legitimate business interest supporting the covenants in light of the fact that it has abandoned and ceased doing business as a going concern as of March 31, 2010." [DE-63-9, fn. 2.].

As an initial matter, Cayman has a legitimate business interest in enforcing the restrictive covenant due to the existence of trade secrets, as is evidenced by the Declaration of Scott Steele. *See* Declaration of Scott Steele: Paragraphs 27-31; *see also* section 542.335(1)(b) (stating that the term "legitimate business interest" includes "trade secrets"). Moreover, Plaintiff's abandonment argument fails because at best that provides a factual <u>defense</u> to enforcement of a restrictive covenant. *See* section 542.335(g), Fla. Stat.; *Wolf v. James G. Barrie, P.A.*, 858 So. 2d 1083, 2003 Fla. App. LEXIS 14565 (Fla. 2nd DCA 2003). More importantly, in this case, Cayman ceased operations <u>as the result of Plaintiff's breach of the restriction</u>, which precludes Plaintiff's reliance on the "out of business" defense. *See* section 542.335(g)(2), Fla. Stat., stating that a court "may consider **as a defense** the fact that the person seeking enforcement no

longer continues in business in the area or line of business that is the subject of the action to enforce the restrictive covenant **only if such discontinuance of business is not the result of a violation of the restriction**." *Id. (emphasis added).*

Once the legitimate business interest prong of the analysis is complete, the court will examine the duration and scope for of the restrictive covenant for reasonableness. As the case *cited in Plaintiff's own motion makes clear*, "The issue of whether a non-compete agreement is reasonable or overly broad is a question of fact for the trial court." DE-63-9 (citing *Whitby v. Infinity Radio, Inc.*, 951 So. 2d 890, 2007 Fla. App. LEXIS 733 (Fla. 4th DCA 2007) (holding that trial court erred in granting appellee partial summary judgment on this issue without conducting an evidentiary hearing as to the covenant's reasonableness and scope)). In short, Plaintiff is left up the proverbial creek without a paddle.[9]

### ii. Chen's Employment Status

There are at least two genuine disputes of material fact with respect to Chen's employment status with Cayman, both of which could significant implications with respect to the enforceability of the agreements. The first is whether Chen was even a Cayman employee, and the other is whether he properly terminated his employee status.[10]

---

[9] As an aside, even if the Court hypothetically declared any or all of these clauses as unreasonable under section 542.335, the most the Plaintiff would be entitled to is an adjustment of the terms by the Court. See section 542.335(1)(c) ("If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interests.").

[10] We note that both Count X of the Amended Complaint and Count II of the Counterclaim seek a declaration regarding Chen's employment status. As noted *supra*, Cayman's Answer to Count X is due December 6, 2010. With respect to Count II of the Counterclaim, Chen denied many of Cayman's allegations in his Answer (DE-58).

### a. Was Chen a Cayman Employee?

Plaintiff asserts in his Motion that because his payroll apparently originated there, "It is beyond dispute . . . that Mr. Chen was in fact employed by Steele Software Systems, Inc." [DE# 63-2-3]. Plaintiff's incredibly sophistic argument ignores applicable law, common sense, and, *inter alia*, that Chen signed an employment agreement with *Cayman*, pursuant to which he provided services to Cayman. Indeed, the Employment Agreement provided Cayman with a substantial amount of control over Chen's work. [DE-53-1]. Plaintiff also ignores the fact that payroll was managed for all of Steele's corporations, including Cayman, through SteeleSoft Management, LLC. [Declaration of Steele: Paragraph 26]. "This entity operated as an employee leasing mechanism for all of my companies, to all personnel." *Id*. "All payments to Chen were allocated on the books for payroll expense for Cayman." *Id*. "It was simply for payroll processing and administrative purposes." *Id*. Plaintiff's argument also conveniently ignores that Plaintiff authored a resignation letter to Cayman. Thus, whether Chen was an employee of Cayman is a disputed issue of material fact, and it precludes summary judgment.

### b. Did Chen Effectively Terminate His Employment Agreement?

There is also a genuine dispute as to a material fact regarding the related issue of whether Chen properly terminated his Employment Agreement with Cayman. According to Plaintiff, "Mr. Chen verbally terminated his purported employment with Cayman Arts during a meeting with Defendant Steele on July 22, 2009. Mr. Chen thereafter terminated his purported employment with Cyman Arts in writing on September 11, 2000." [DE-63-5, para. 5].

Cayman disputes that Chen effectively terminated his agreement, and he remains subject to the terms of the Employment Agreement. [Declaration of Scott Steele: Paragraphs 36-40]. As explained therein, the Employment Agreement required all termination notices be given by certified mail, return receipt requested. Chen's alleged verbal termination and his written letter were not in accordance with the specific terms and conditions under the various agreements and were therefore ineffective, precluding summary judgment on this issue.

### iii. Was There Consideration for the Agreements?

Perhaps most incredibly, Plaintiff asserts that, "[M]r. Chen is entitled to summary judgment declaring the agreements are invalid and unenforceable in their entirety for lack of consideration." [DE-63: Page 3]. Defendants strongly dispute this bogus contention, as both agreements were clearly supported by valuable consideration, as is evidenced by the terms of the contracts, the very wording of the agreements themselves, and the "Declaration of Scott Steele." For example, as Scott explains, "The parties specifically contemplated the facts and circumstances which are in issue in this case, and specifically negotiated and agreed upon a separation clause, which includes royalties from Chen's works until Cayman's investment is repaid." [Declaration of Scott Steele: Paragraph 25]. Thus, summary judgment is inappropriate.

### CONCLUSION

For the reasons set forth above, the Court must deny Plaintiff's Motion for Partial Summary Judgment.

> Respectfully submitted,
> S. Tracy Long, Esq. Of Counsel to
> NICHOLSON LAW GROUP, P.A.
> 200 South Andrews Ave.
> Suite 100
> Fort Lauderdale, Florida 33301
> Telephone: (954) 351-7474
> Facsimile: (954) 351-7475
>
> __s/S. Tracy Long_____
> S. Tracy Long, Esq.
> Florida Bar No.: 0843008
> EM: tracy@nicholsonlawgroup.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2010 I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF or in some authorized manner for counsel or parties who are not authorized to receive electronically Notice of Electronic Filing

> __s/S. Tracy Long_____
> S. Tracy Long, Esq.