UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80236-CIV-COHN/SELTZER

CAREY CHEN,

   Plaintiff,

v.

CAYMAN ARTS, INC., a Florida corporation
and SCOTT R. STEELE, an individual,

   Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Carey Chen's Motion for Partial Summary Judgment [DE 63] ("Motion"). The Court has considered the Motion, Defendants Cayman Arts, Inc.'s ("Cayman's") and Scott R. Steele's Response [DE 71], Mr. Chen's Reply [DE 75], and the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

On February 12, 2010, Plaintiff Carey Chen, a marine artist, brought this action for a variety of claims relating to his employment with Defendants Cayman Arts, Inc. ("Cayman") and Cayman's President and Chief Executive Officer, Scott R. Steele. See Amended Complaint [DE 22]. According to the Amended Complaint, Mr. Chen and Mr. Steele had a long-time friendship, in the course of which, Mr. Steele learned about certain companies for which Mr. Chen worked. Am. Compl. ¶¶ 7, 9. Mr. Steele states, "In an effort to assist Chen gain wider exposure and notoriety for his artwork, and to make money through this promotion, [Mr. Steele] entered into negotiations . . . for the

purchase of [the companies]." Steele Decl. ¶ 7 [DE 73]. In September of 2004, Mr. Steele purchased the companies and changed their name to Cayman Arts, Inc. ("Cayman"). Id. ¶¶ 14, 16; Purchase Agreement, Ex. B to Steele Decl. [DE 73-3; DE 73-4].

On May 31, 2005, to formalize Mr. Chen's employment arrangement, Cayman and Mr. Chen executed an Employment Agreement [DE 63-1 at 1-6],[1] an Addendum to Agreement [DE 63-1 at 7-10] ("Addendum"), and a Trademark and Product License Agreement [DE 63-2] ("Trademark Agreement"), (collectively, "Agreements"). Together, the Agreements describe Mr. Chen's and Cayman's duties, obligations, and responsibilities in the course of the employment relationship. See Agreements.

On September 11, 2009, Mr. Chen wrote a letter [DE 63-4] ("Chen Letter"), explaining, "Cayman has not met its contractual and other obligations. Cayman is in material breach and, as a consequence, my obligations under the Agreements are relieved." Chen Letter ¶ 1. The Chen Letter also stated, "In view of the foregoing and other factors, the Agreements are terminated." Id. ¶ 4. Thereafter, on March 25, 2010, Cayman sent Mr. Chen a letter [DE 63-5] ("Cayman Letter"), notifying Mr. Chen that "as of March 31, 2010, Cayman Arts, Inc. is abandoning its business as a going concern. After that date, Cayman Arts, Inc. will only fulfill orders that it has taken prior to March

---

[1] The Employment Agreement attached to Mr. Chen's Motion appears to be missing page 6. See Employment Agreement at 5-6. There is a page 6 included in the Employment Agreement attached as an exhibit to the Complaint [DE 1 at 40] and Amended Complaint [DE 22-2 at 6], but this version of the Agreement is unsigned and includes an edit changing the date from "5/18/2005" to "7/26/2009." Otherwise, the unsigned Employment Agreement is identical to the signed Employment Agreement attached to the Motion.

31, 2010 and liquidated existing inventory that was created or purchased prior to that date." Cayman Letter at 1. In the same letter, Cayman demanded that Mr. Chen make the payments outlined in the separation provision of the Trademark Agreement, Section 6.5. Id. at 1-2.

In connection with the above facts, Mr. Chen's Amended Complaint brings 10 counts against Defendants: breach of contract (Count I); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1) (2006) (Count II); misappropriation of name and likeness pursuant to Florida Statutes § 540.08 (2007) (Count III); unfair competition (Count IV); recovery of overtime compensation (Count V); wages (Count VI); breach of implied covenant of good faith and fair dealing (Count VII); accounting (VIII); unjust enrichment (Count IX); and declaratory relief (Count X). See Compl. On August 30, 2010, Cayman filed its Counterclaim [DE 51] against Mr. Chen for various declaratory relief (Counts I–III) and breach of contract (Counts IV and V). See Countercl. On November 5, 2010, Mr. Chen filed his Motion for Partial Summary Judgment. See Mot.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show the Court

that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

Mr. Chen's Motion for Partial Summary Judgment requests an order granting him partial summary judgment on Count X of his Amended Complaint, and summary judgment on Counts II and III of Cayman's Counterclaim. Specifically, Mr. Chen requests the following declaratory judgment from Count X of his Amended Complaint:

(a) that Mr. Chen resigned from his alleged employment with Cayman Arts

4

pursuant to the terms and conditions of the Employment Agreement and that his employment ended on October 11, 2009;[2]

(b) that the Trademark Agreement, including but not limited to the 20 year restriction contained therein, is invalid and unenforceable as an invalid restraint on trade;

(c) that Cayman Arts and Steele have no ownership rights, licensing rights, or any other rights, with respect to Mr. Chen's artwork, merchandise, or other works and creations, subsequent to his resignation from Cayman Arts;

(d) that Cayman Arts and Steele have no ownership rights, licensing rights, or any other rights, with respect to Mr. Chen's artwork, merchandise, or other works, prior to his employment with Cayman Arts.

Mot. at 18-19; Am. Compl. ¶ 178(a)-(d). As for Counts II and III of Cayman's Counterclaim, Mr. Chen seeks an order granting summary judgment denying Cayman's requests for:

Count II: "Declaratory Judgment determining that Chen[] is still an employee of Cayman, and did not properly terminate said employment on September 11, 2009 . . ."

Count III: "Declaratory Judgment determining that the License is exclusive, worldwide, and applicable to all of Chen's past works, current works, works in progress, and future works, for a period of twenty (20) years from the date of the License; [and] a permanent injunction against Chen, under the appropriate terms and conditions prohibiting Chen from transferring or offering any intellectual property rights, or the rights to promote, market, offer for sale, and sell any of Chen's works to third-parties, in which it is determined and adjudged such intellectual property rights belong to Cayman . . ."

Countercl. at 10, 12; see also Mot. at 1, 18-19. As discussed below, the Court finds that Mr. Chen is entitled to summary judgment that he resigned on September 11,

---

[2] The Amended Complaint requests a declaration that Mr. Chen's employment ended on October 8, 2009, Am. Compl. ¶ 178(a), but the Motion for Partial Summary Judgment requests a declaration that Mr. Chen's employment ended on October 11, 2009, Mot. at 18.

5

2009, effective October 11, 2009, but that all other requests for summary judgment must be denied.

### A. Mr. Chen's Resignation from Employment with Cayman (Amended Complaint Count X(a), Counterclaim Count II)

Mr. Chen believes he terminated his employment with Cayman on September 11, 2009, effective October 11, 2009. Cayman contends, however, that Mr. Chen is still a Cayman employee because his purported termination was improper.

Section 10 of the Employment Agreement outlines the terms for "Termination by Employee" as follows:

> In the event that the Employee terminates his/her employment with the Corporation by giving at least thirty (30) days prior written notice, the Corporation shall be obligated to pay the Employee's Compensation (as described in the Addendum attached hereto) only until the date that the Employee leaves the employ of the corporation; . . . However, regardless of termination, Employee shall remain bound by the provisions describing the Trademark and License Agreement described in Section 3, herein.

Employment Agreement § 10. Section 3 provides that "regardless of the . . . termination . . . of Employee's employment status, the Trademark and Product License Agreement shall remain in full force and effect throughout the prescribed twenty (20) year effective period," id. § 3, and that this section "shall survive termination independent of this Agreement," id. The Addendum does not include any requirements relating to termination by the employee, see Addendum, but the Trademark Agreement confirms that it survives after termination of the Employment Agreement, when it states:

> [A]lthough Licensor's employment may be terminated as described in the Employment Agreement and Addendum attached hereto, Licensee shall still retain all rights, title and interest through the grant of license by Licensor in those Product Marks for the entire twenty (20) year period as described in Section 7 of the Employment Agreement.

6

Trademark Agreement at 1.

The undisputed facts establish that Mr. Chen provided written notice of his resignation in a letter dated September 11, 2009. See Chen Letter. In the letter, Mr. Chen stated that he provided notice of his termination when he met in person with Mr. Steel in Maryland on July 22, 2009, see id. ¶ 2, but as a verbal notice is not sufficient under the terms of the Employment Agreement, see Employment Agreement § 10, the notice provided in the written letter is the effective notice. Mr. Chen wrote "I will continue to perform my duties and responsibilities within the course and scope of my position with Cayman, for the next thirty (30) days, through October 11, 2009, for my regular compensation. Should you wish my termination effective immediately please notify." Chen Letter ¶ 3. Therefore, consistent with the requirement that an employee may terminate his employment "by giving at least thirty (30) days prior written notice," Employment Agreement § 10, Mr. Chen's employment under the Employment Agreement was effectively terminated on October 11, 2009.

Despite Mr. Chen's 30-day written notice of termination, Defendants argue that Mr. Chen's termination was not effective because "the Employment Agreement required all termination notices be given my certified mail, return receipt requested," Resp. at 17, and Mr. Chen's letter was sent by regular U.S. mail rather than certified mail, Steele Decl. ¶ 41. Neither the Employment Agreement nor the Addendum mentions a certified mail requirement. Defendants do not point to any evidence of a certified mail requirement other than Mr. Steele's statement in his Declaration. See Resp. at 17; Steele Decl. ¶¶ 41-42. Mr. Steele's sworn Declaration states, "The employment agreement specifically states that any termination must be by certified mail, and that

7

this condition must be strictly complied with," Steele Decl. ¶ 42, a statement that Mr. Chen's Reply does not controvert. Yet, the Employment Agreement requires nothing more than 30-days written notice. See Employment Agreement § 10. Pursuant to Federal Rule of Civil Procedure 56, a declaration used to oppose a summary judgment motion must set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). Mr. Steele's statement is not a proper fact for a summary judgment motion declaration because the statement would not be admissible. Under Florida's parol evidence rule,[3] when the parties intend a writing to incorporate their final and complete agreement, absent any exception such as fraud or ambiguity, parol evidence is not admissible to vary the terms of the writing. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309-10 (11th Cir. 1998). The parties have not alleged fraud, and Section 10 of the Employment Agreement is unambiguous. Therefore, Mr. Steele's statement constitutes inadmissible parol evidence, and the Court will not consider Mr. Steele's statement regarding a certified mail requirement as an undisputed fact in evaluating this Motion for Partial Summary Judgment. Rather, the Court finds that Mr. Chen properly terminated the Employment Agreement.

This termination does not affect the Trademark Agreement, however, as the parties agreed that the Trademark Agreement would remain in force despite any change in employment status or termination of the Employment Agreement. See Employment Agreement § 3; Trademark Agreement at 1. The Trademark Agreement

---

[3] "The parol evidence rule is not a rule of evidence, but rather is a substantive rule of law. . . . We therefore apply Florida law on this issue." Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309 n.47 (11th Cir. 1998) (citing Knabb v. Reconstr. Fin. Corp., 197 So. 707, 715 (Fla.1940)).

8

provides that it may only be terminated before the 20-year term or any renewal of that term:

> by mutual written consent of each Party hereto, or if Licensee has exercised its good faith efforts in promoting and selling Product Marks and has reasonably demonstrated to Licensor that there is a lack of market acceptance for the Licensed Products, one hundred and twenty (120) days after Licensee provided Licensor with written notice of its intent to terminate.

Trademark Agreement § 6.3.

Mr. Chen argues that his resignation effectively terminated the Trademark Agreement in addition to the Employment Agreement, but he has shown neither that the parties provided mutual written consent to terminate the agreement, nor that he demonstrated to Cayman that there was a lack of market acceptance for his artwork 120 days after sending his September 11, 2009 resignation letter. See Trademark Agreement § 6.3. Accordingly, though the Court will grant Mr. Chen's summary judgment request for a declaration that he resigned from Cayman and terminated his Employment Agreement, the Trademark Agreement remains in force.

## B. Restraints on Trade
## (Amended Complaint Count X(b), Counterclaim Count III)

Mr. Chen contends that certain contractual provisions are illegal restraints under Florida law because they either restrict him from seeking future employment as an artist or require him to pay Cayman's directors a percentage of any income derived from future employment in exchange for Cayman's permission to continue his career as an artist. Mot. at 8-9. Specifically, Mr. Chen characterizes the following provisions as "restraints on trade," id. at 6-8:

- [F]or twenty (20) years from [September 1, 2004], Licensor agrees that he shall be prohibited in any way from offering such Licensed Products, Trade

9

> Marks and Works to any third party, individual or entity without the express written consent of Licensee.
> Trademark Agreement at 1.

- In such case as Licensee decides that it shall abandon or dissolve Cayman Arts, Inc., following such dissolution or abandonment and on the advisement by the Directors of Cayman Arts, Inc. that the Company is no longer a viable method of productivity, the Directors of Cayman Arts, Inc. shall release Licensor from the Trademark and License commitment in this Agreement so long as prior to the end of the Term Licensee receives from Licensor the following schedule of payments:
>> 6.5.1. For the first three years from date of official/formal dissolution or Abandonment, the Directors of Licensee shall receive fifty (50) percent of all gross fees or income generated;
>> 6.5.2. For the next three years the Directors of Licensee shall receive thirty-five (35) percent of all gross fees or income generated;
>> 6.5.3. For the next three years the Directors of Licensee shall receive twenty-five (25) percent of all gross fees or income generated; and
>> 6.5.4. For any remaining years prior to the end of the Term of this Agreement, the Directors of Licensee shall receive ten (10) percent of all gross fees or income generated.
> Id. § 6.5.[4]

Cayman responds that these provisions are governed by the federal Visual Arts Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, which preempts Florida law, and that therefore summary judgment under Florida law is improper.

Pursuant to 17 U.S.C. § 301, any rights covered by VARA are governed exclusively by VARA, and thus, "no person is entitled to any such right or equivalent right in any work of visual art under the common law or statutes of any State." 17 U.S.C. § 301(f)(1). Yet, common law and statutory remedies are not limited with

---

[4] Mr. Chen's Motion argues that certain restrictive covenants in the Employment Agreement also constitute restraints on trade, Mot. at 6-8; Employment Agreement § 17, but neither the Amended Complaint nor the Counterclaim seeks declaratory judgment as to the restrictive covenants contained in the Employment Agreement. Accordingly, the only provisions at issue here are those contained in the Trademark Agreement.

respect to "activities violating legal or equitable rights that are not equivalent to any of the rights conferred by [VARA] with respect to works of visual art." 17 U.S.C. § 301(f)(2). In other words, preemption will occur if (1) the causes of action are equivalent to the exclusive rights of VARA, and (2) the Trademark Agreement provisions fall within the subject matter of VARA. 17 U.S.C. § 301(f); see also Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C., 596 F.3d 1313, 1325 (11th Cir. 2010) (citing Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983)). If Florida state law is preempted, then Mr. Chen's request for summary judgment based on Florida law must fail.

Turning to the first prong of the preemption test, the Court finds that the causes of action at issue here are equivalent to the rights covered in VARA. VARA governs not only an author's rights of attribution and integrity in his work, 17 U.S.C. § 106(A)(a), but also the transfer and waiver of those rights, id. § 106(A)(e). "VARA was designed to protect the moral rights of artists in their works. Moral rights protect an artist's interest in the proper use of the artist's name and in maintaining the physical integrity of the artist's work." Teter v. Glass Onion, Inc., 723 F. Supp. 2d 1138, 1158 (W.D. Mo. 2010). These moral rights are distinct from the economic rights that a copyright holder possesses, as described in the other rights created by the Copyright Act. See 17 U.S.C. § 106 ("exclusive rights in copyright works"); 17 U.S.C. § 106A (these rights are "independent of the exclusive rights provided in section 106"); 17 U.S.C. § 106A(b) ("Only the author of a work of visual art has the rights conferred by subsection (a) in that work, whether or not the author is the copyright owner"); see also Berrios Nogueras v. Home Depot, 330 F. Supp. 2d 48, 50 (D. Puerto Rico 2004) ("Moral rights are to be

11

distinguished from economic rights, which are held by the holder of the copyright in a work"). The Amended Complaint and Counterclaim bring declaratory judgment counts regarding the validity of the Trademark Agreement and the parties' ownership, licensing, and other rights to Mr. Chen's work under the Trademark Agreement. Am. Compl. ¶ 178(b)-(d); Countercl. at 12. Each of these questions falls under VARA.

However, Defendants have not necessarily proven the second prong of the preemption test, as remaining factual issues preclude a finding at this time that VARA actually applies to the Trademark Agreement. VARA only applies to an author's rights regarding a "work of visual art." 17 U.S.C. § 106A. The Act defines a "work of visual art" as

> (1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or
>
> (2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

17 U.S.C. § 101. VARA also describes works that are not "works of visual art," including, for instance, "any work made for hire," id., which is defined in part as "a work prepared by an employee within the scope of his . . . employment," id. Thus, to the extent that Mr. Chen's work is work prepared in the scope of his employment with Cayman, VARA does not govern.

Neither party has provided the Court with evidence as to whether Mr. Chen's work was "made for hire." Discovery is ongoing in this case though, and the discovery

12

deadline is not until May 6, 2011. See Amended Scheduling Order [DE 80]. Accordingly, at this time, the Court will not grant Mr. Chen summary judgment with respect to the validity of the Trademark Agreement and the parties' rights under the 20-year license in the Trademark Agreement. Rather, the Court will permit Mr. Chen to resubmit his summary judgment request on this issue once the parties have completed discovery.

### C. Defendants' Rights to Mr. Chen's Work
### (Amended Complaint Count X(c)-(d))

Count X(c) of the Amended Complaint seeks a declaration that Defendants have no rights to Mr. Chen's work before, during, or after his employment with Cayman. Am. Compl. ¶ 178(c). Mr. Chen's principal arguments relating to this requested relief are (1) that the penalty payment provision in the Trademark Agreement is unenforceable because it benefits unnamed and unidentified directors, Mot. at 14-15, and (2) that the Employment Agreement and the separation clause in the Trademark Agreement are invalid and unenforceable for lack of consideration, id. at 15-17. As explained below, the Court finds both arguments to be without merit.

#### 1. Penalty Payment Provision

The penalty payment provision of the Trademark Agreement, Section 6.5, provides that in the event of Cayman's dissolution,

> the Directors of Cayman Arts, Inc. shall release Licensor from the Trademark and License commitment in this Agreement so long as prior to the end of the Term Licensee receives from Licensor the following schedule of payments:
> 6.5.1. For the first three years from date of official/formal dissolution or Abandonment, the Directors of Licensee shall receive fifty (50) percent of all gross fees or income generated;
> 6.5.2. For the next three years the Directors of Licensee shall receive thirty-five (35) percent of all gross fees or income generated;

13

> 6.5.3. For the next three years the Directors of Licensee shall receive twenty-five (25) percent of all gross fees or income generated; and
> 6.5.4. For any remaining years prior to the end of the Term of this Agreement, the Directors of Licensee shall receive ten (10) percent of all gross fees or income generated.

Trademark Agreement § 6.5. Mr. Chen argues that Florida Statutes Section 542.335(1)(f) prohibits Cayman from seeking enforcement of this section because the section benefits Cayman's unnamed and unidentified directors, and the Trademark Agreement does not identify any third-party beneficiary or expressly state that Section 6.5 was intended for the benefit of any alleged third-party beneficiary. Mot. at 14. This argument is inapposite. Florida Statutes 542.335(1)(f) governs when a third-party beneficiary seeks enforcement of a restrictive covenant. Fla. Stat. § 542.335(1)(f). Even if Cayman's directors are third-party beneficiaries to this contract, as Mr. Chen contends, they are not the ones seeking enforcement of the provision; rather, Cayman itself seeks enforcement of the provision in its own contract. Accordingly, § 542.335(1)(f) does not apply. Mr. Chen has not demonstrated that Cayman cannot seek enforcement of its own contract. Therefore, the Court will not hold the payment penalty provision invalid under Florida Statutes § 542.335(1)(f).

### 2. Lack of Consideration

Mr. Chen also contends that the Employment Agreement and the separation clause in the Trademark Agreement are invalid and unenforceable for lack of consideration. Mot. at 15-17. "It is a fundamental principle of contract law that a promise is not enforceable unless it is supported by consideration." Johnson Enters., 162 F.3d at 1311. "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." Cintas

14

Corp. No. 2 v. Schwalier, 901 So. 2d 307, 309 (Fla. Dist. Ct. App. 2005). "If one party has the unrestricted right to terminate the contract at any time, that party makes no promise at all and there is not sufficient consideration for the promise of the other." Pick Kwik Food Stores, Inc. v. Tenser, 407 So. 2d 215, 218 (Fla. Dist. Ct. App. 1981). Florida courts have held that a promise of continued employment, increased pay, and benefits represent consideration for an employment contract. See Cintas, 901 So. 2d at 309 ; see also Bhim v. Rent-A-Center, Inc., 655 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009) (continued employment provided consideration for an agreement).

The Court does not find any evidence to support Mr. Chen's contention that there was no consideration for the Agreements in either his Motion or exhibits. Rather, the exhibits suggest that there was adequate consideration. The Employment Agreement states that "[i]n consideration for services rendered by the Employee to the Corporation pursuant to this Agreement, the Corporation shall pay to the Employee all that compensation as described in the attached Addendum." Employment Agreement § 4. The Addendum describes Mr. Chen's salary as an $81,000 base with a potential for a bonus, and states that Cayman will provide benefits. Addendum §§ 1, 2, 9. As for the Trademark Agreement, in describing the 20-year license, the Trademark Agreement states that the license is "in consideration of the past, current and future employment of Licensor, and for all compensation granted to Licensor as described in the attached Employment Agreement and other good and valuable consideration . . ." Trademark Agreement at 1. The Employment Agreement, Addendum, and Trademark Agreement each describe certain duties, obligations, and responsibilities that Mr. Chen promised to perform or undertake. See Employment Agreement §§ 5, 12; Addendum § 7;

15

Trademark Agreement § 7. Though a contract's recitation of the giving and receiving of consideration is not dispositive, see Johnson Enters., 162 F.3d at 1312-13 (finding no consideration despite contract's recitation of consideration), Mr. Chen has presented no evidence to refute these recitations. Furthermore, neither of these promises grant unrestricted rights to either party to terminate the contract at any time. Rather, the promises that Cayman and Mr. Chen exchanged are enough to constitute consideration for both the Employment Agreement and Trademark Agreement. See Cintas Corp., 901 So. 2d at 309; Bhim, 655 F. Supp. 2d at 1313.

Mr. Chen's contention that his employment is not consideration because his W-2 forms show he was employed by Steele Software Systems Corp. ("SteeleSoft"), not Cayman, is inapposite. See Mot. at 15; W-2 Forms, Ex. 3 to Mot. [63-3]. The mere fact that Mr. Chen's payroll originated with SteeleSoft does not render him a SteeleSoft employee, especially when he signed an Employment Agreement, Addendum, and Trademark Agreement with Cayman. Mr. Steele's Declaration explains that Mr. Steele formed SteeleSoft to manage and administer all of his corporations, including Cayman. Steele Decl. ¶ 26. To the extent that Mr. Chen claims his employer was SteeleSoft, Mot. at 16, and Defendants claim Mr. Chen's employer was Cayman, Resp. at 16, there remains a disputed material fact that precludes summary judgment on this issue.

Finally, Mr. Chen's remaining two arguments are also without merit: (1) that even if Cayman was his employer, there was still no valid consideration for the 20-year license for any work of art created by Mr. Chen after his employment was terminated, Mot. at 16, and (2) that there is no specific consideration for Section 6.5 of the Trademark Agreement because all the payments are to be made to the "Directors of

Licensee," not to Cayman Arts, id. Mr. Chen provides no evidence beyond the contracts themselves and no law in support of these arguments. Instead, Defendants submit Mr. Steele's statement that "[t]he parties specifically contemplated the facts and circumstances which are in issue in this case and specifically negotiated and agreed upon a separation clause, which includes royalties from Chen's works until Cayman's investment is repaid." Steele Decl. ¶ 25. The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and Mr. Chen has not met this burden here. The Court is therefore unconvinced that the Employment Agreement and Trademark Agreement are invalid and unenforceable for lack of consideration.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff Carey Chen's Motion for Partial Summary Judgment [DE 63] is **GRANTED in part and DENIED in part** as follows:

1.  The Motion is **GRANTED** with respect to Count X(a) of the Amended Complaint and Count II of the Counterclaim. The Court hereby declares that Plaintiff Carey Chen resigned from his employment with Cayman Arts pursuant to the terms and conditions of the Employment Agreement and that his employment ended on October 11, 2009. The Employment Agreement has been effectively terminated, but the Trademark Agreement remains in force.

2. The Motion is **DENIED** with respect to Counts X(b), (c), and (d) of the Amended Complaint and Count III of the Counterclaim.

3. Mr. Chen may resubmit his summary judgment request as to the validity of the Trademark Agreement and applicability of Florida state law or the federal Visual Arts Rights Act once the parties have completed discovery.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 24th day of February, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF