UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80236-CIV-COHN/SELTZER

CAREY CHEN,

   Plaintiff,

v.

CAYMAN ARTS, INC., a Florida corporation
and SCOTT R. STEELE, an individual,

   Defendant.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT
### AND DENYING DEFENDANT/COUNTER-PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Carey Chen's Renewed Motion for

Partial Summary Judgment [DE 140] ("Chen's Motion") and Defendant/Counter-Plaintiff

Cayman Arts, Inc.'s ("Cayman's") Motion for Partial Summary Judgment [DE 144]

("Cayman's Motion").  The Court has considered Mr. Chen's Motion, Cayman's

Response [DE 152], Mr. Chen's Reply [DE 155], Cayman's Motion, Mr. Chen's

Response [DE 151], Cayman's Reply [DE 154], the parties' related submissions, and

the record in this case, and is otherwise advised in the premises.

## I.  BACKGROUND

Plaintiff Carey Chen, a marine artist, filed this action on February 12, 2010.

Complaint [DE 1].  He brings a variety of claims relating to his employment with

Defendants Cayman Arts, Inc. ("Cayman") and Cayman's President and Chief

Executive Officer, Scott R. Steele.  See Amended Complaint [DE 22].

The parties' employment relationship began in 2004, when Mr. Steele purchased

certain companies for which Mr. Chen had been working and changed the companies'

name to Cayman Arts, Inc. ("Cayman").  On May 31, 2005, to formalize the employment

arrangement, Mr. Chen and Cayman executed an Employment Agreement [DE 140-2

at 1-6],[1] Addendum to Agreement [DE 140-2 at 7-10] ("Addendum"), and Trademark

and Product License Agreement [DE 140-3] ("Trademark Agreement"), (collectively,

"Agreements").  Together, the Agreements describe Mr. Chen's and Cayman's duties,

obligations, and responsibilities in the course of the employment relationship.  See

Agmts.

On September 11, 2009, Mr. Chen wrote a letter [DE 63-4] ("Chen Letter"),

explaining, "Cayman has not met its contractual and other obligations.  Cayman is in

material breach and, as a consequence, my obligations under the Agreements are

relieved."  Chen Letter ¶ 1.  The Chen Letter also stated, "In view of the foregoing and

other factors, the Agreements are terminated."  Id. ¶ 4.  Thereafter, on March 25, 2010,

Cayman sent Mr. Chen a letter [DE 140-4] ("Cayman Letter"), notifying Mr. Chen that

"as of March 31, 2010, Cayman Arts, Inc. is abandoning its business as a going

concern.  After that date, Cayman Arts, Inc. will only fulfill orders that it has taken prior

to March 31, 2010 and liquidate existing inventory that was created or purchased prior

to that date."  Cayman Letter at 1.  In the same letter, Cayman demanded that Mr.

---

[1]  The Employment Agreement attached to Mr. Chen's Motion appears to be missing page 6.  See Employment Agreement at 5-6.  There is a page 6 included in the Employment Agreement attached as an exhibit to the Complaint [DE 1 at 40] and Amended Complaint [DE 22-2 at 6], but this version of the Agreement is unsigned and includes an edit changing the date from "5/18/2005" to "7/26/2009."  Otherwise, the unsigned Employment Agreement is identical to the signed Employment Agreement attached to Mr. Chen's Motion.

Chen make the payments outlined in Section 6.5 of the Trademark Agreement.  Id. at 1-2.

In connection with the above facts, Mr. Chen's Amended Complaint brings the following ten counts against Cayman and Mr. Steele: breach of contract (Count I); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count II); misappropriation of name and likeness pursuant to Florida Statutes § 540.08 (Count III); unfair competition (Count IV); recovery of overtime compensation (Count V); wages (Count VI); breach of implied covenant of good faith and fair dealing (Count VII); accounting (VIII); unjust enrichment (Count IX); and declaratory relief (Count X).  See Compl.  Cayman's Counterclaim [DE 51 at 1-15] brings claims against Mr. Chen for various declaratory relief (Counts I–III) and breach of contract (Counts IV and V).  See Countercl.  Along with the Counterclaim, Cayman also filed a Third-Party Complaint [DE 51 at 16-27] against Third-Party Defendants Fisher Blue Water Galleries, LLC ("Fisher"), Monique Comfort, and Gray Ingram's (collectively "Third-Party Defendants").[2]

On November 5, 2010, Mr. Chen filed his first Motion for Partial Summary Judgment [DE 63], requesting summary judgment on Amended Complaint Count X and Counterclaim Counts II and III.  On February 24, 2011, the Court entered summary judgment in Mr. Chen's favor with respect to Amended Complaint Count X(a) and Counterclaim Count II, declaring, "Plaintiff Carey Chen resigned from his employment with Cayman Arts pursuant to the terms and conditions of the Employment Agreement

---

[2] The Third-Party Defendants also include "John and Jane Doe, unknown entities."  Countercl. & Third-Party Compl. at 1.  The pending Motions for Summary Judgment do not seek relief for any claims pending against the Third-Party Defendants.

and [] his employment ended on October 11, 2009.  The Employment Agreement has been effectively terminated but the Trademark Agreement remains in force."  Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment [DE 87] ("February 24th Order") at 17.  The Court denied Mr. Chen's request with respect to the remainder of Amended Complaint Count X and Counterclaim Count III, but permitted him to "resubmit his summary judgment request as to the validity of the Trademark Agreement and applicability of Florida state law or the federal Visual Rights Act once the parties have completed discovery."  Id. at 18.

On June 24, 2011, Mr. Chen filed his Renewed Motion for Partial Summary Judgment, and Cayman filed its Motion for Partial Summary Judgment.  Mr. Chen renews his request for summary judgment on the remainder of Amended Complaint Count X and on Counterclaim Count III.  Mr. Chen also requests summary judgment on Amended Complaint Counts I, II, III, IV, and VII, and Counterclaim Counts IV and V. Cayman's Motion requests summary judgment on Counterclaim Count V.  As explained below, the Court finds that Section 6.5 of the Trademark Agreement is invalid and unenforceable under Florida law.  Accordingly, the Court will enter summary judgment in Mr. Chen's favor as to the applicable parts of Amended Complaint Count X and Counterclaim Count III.  In all other respects, the parties' requests for summary judgment will be denied at this time.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).

4

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

This dispute centers upon two provisions in the parties' Trademark Agreement, Section 6.5 and Section 7.1.  The parties dispute the validity and enforceability of Section 6.5, the provision describing a payment schedule to be implemented in the

5

event of Cayman's dissolution or abandonment.  Mr. Chen argues  that he is entitled to summary judgment on Amended Complaint Count X and Counterclaim Count III because Section 6.5 is unlawful under Florida Statutes § 542.335.  Cayman contends, however, that the federal Copyright Act preempts Florida law and that Section 6.5 is valid and enforceable.  Thus, Cayman seeks summary judgment on Count V of its Counterclaim.  Additionally, Mr. Chen seeks summary judgment on Counts I, II, III, IV, and VII of the Amended Complaint and Counts IV and V of the Counterclaim on the basis that Cayman failed to use its "best efforts" in connection with the distribution, sale, and offering for sale of the Licensed Products in order to maximize sale of the License Products, as required under Section 7.1 of the Trademark Agreement.  First, the Court addresses the arguments pertaining to the validity and enforceability of Section 6.5, and second, the Court addresses Cayman's compliance with the "best efforts" provision of Section 7.1.

### A. The Validity and Enforceability of Section 6.5[3]
### (Counterclaim Counts III and V, Amended Complaint Count X)

Cayman asserts that Mr. Chen breached the Trademark Agreement when he failed to make payments in compliance with Section 6.5 of the Trademark Agreement.  Mr. Chen does not dispute that he has not made any payments under Section 6.5, but responds that Section 6.5 is invalid and unenforceable under Florida law.

---

[3]  The Court notes that on February 24, 2011, in ruling on Mr. Chen's first Motion for Partial Summary Judgment, the Court held that the Employment Agreement was terminated on October 11, 2009, but that this termination did not affect the Trademark Agreement.  See Feb. 24th Order at 17.  Cayman seemingly infers that the Court held the entire Trademark Agreement, including Section 6.5, to be valid and enforceable, but the Court did not make such a finding.  As such, the Court addresses the validity and enforceability of Section 6.5 at this time.

Section 6.5 provides as follows:

In such case as Licensee decides that it shall abandon or dissolve Cayman Arts, Inc., following such dissolution or abandonment and on the advisement by the Directors of Cayman Arts, Inc. that the Company is no longer a viable method of productivity, the Directors of Cayman Arts, Inc. shall release Licensor from the Trademark and License commitment in this Agreement so long as prior to the end of the Term Licensee receives from Licensor the following schedule of payments:

6.5.1.  For the first three years from date of official/formal dissolution or Abandonment, the Directors of Licensee shall receive fifty (50) percent of all gross fees or income generated;

6.5.2.  For the next three years the Directors of Licensee shall receive thirty-five (35) percent of all gross fees or income generated;

6.5.3.  For the next three years the Directors of Licensee shall receive twenty-five (25) percent of all gross fees or income generated; and

6.5.4.  For any remaining years prior to the end of the Term of this Agreement, the Directors of Licensee shall receive ten (10) percent of all gross fees or income generated.

Trademark Agmt. § 6.5.

Mr. Chen argues that Florida Statutes § 542.335 prohibits Cayman from seeking enforcement of Section 6.5 because the provision constitutes an unlawful restrictive covenant, and that the Copyright Act does not preempt Florida law on this issue.[4] Cayman maintains that the Copyright Act does preempt Florida Statutes § 542.335, and that even if § 542.335 did apply, Section 6.5 does not violate that statute.  The key questions before the Court are therefore: (1) whether the Copyright Act applies to the

---

[4]  Mr. Chen also argues that one section of the Copyright Act, the Visual Arts Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, does not preempt Florida law on this issue, see Chen's Mot., but Cayman agrees that VARA is not applicable, see Cayman's Reply at 7 ("VARA has no bearing on the issues of royalties in the instant Motion."); Cayman's Resp. at 6 ("VARA clearly does not pertain to the economic issues that are at the heart of this case.").

Trademark Agreement; (2) if so, whether the Copyright Act preempts Mr. Chen's state law arguments as to Section 6.5; and (3) if the state law arguments are not preempted, whether Section 6.5 is valid and enforceable under Florida law.

### 1. Application of the Copyright Act

The Copyright Act applies to certain "subject matter of copyright as specified by sections 102 and 103."  17 U.S.C. § 301(b)(1).  Under these sections, the subject matter of copyright encompasses pictorial and graphic works, see 17 U.S.C. § 201, and derivative works, see 17 U.S.C. § 103.  The parties' Trademark Agreement governs Mr. Chen's pictorial and graphic artwork, so the contract falls within the subject matter of copyright.

Mr. Chen's only argument that his artwork does not fall within the subject matter of copyright is that his work is not "fixed" within the meaning of the Copyright Act.  See Chen's Resp. at 4-7.  Section 102 provides, "Copyright protection subsists . . . in original works of authorship *fixed* in any tangible medium of expression . . . ."  17 U.S.C. § 102(a) (emphasis added).  The Copyright Act explains that a work becomes "fixed" for purposes of triggering ownership under the Act "when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."  17 U.S.C. § 101.  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work," 17 U.S.C. § 102(a)(b), copyright protection does extend to "pictorial, graphic, and sculptural works," 17 U.S.C.

8

§ 102(a)(5).

Applying these definitions to this case, Mr. Chen's ideas, thoughts, and concepts are not subject to copyright protection because they are not "fixed."  But once Mr. Chen creates a piece of artwork such as a painting or a sculpture, such work is subject to copyright protection because it becomes "fixed" within the meaning of the Act.  See 17 U.S.C. § 101; see also Hoopla Sports & Entm't, Inc. v. Nike, Inc., 947 F. Supp. 347, 354 n.3 (N.D. Ill. 1996) (finding that a basketball game is not a fixed medium of expression, but once the game is recorded and transmitted, the broadcast is subject to copyright protection.).  In other words, upon Mr. Chen's creation of artwork, the fixed piece of art is subject to copyright protection.  As Cayman notes, "The subject matter of the [Trademark] Agreement at issue is completed artwork."  Cayman's Reply at 4. Therefore, to the extent the Trademark Agreement applies to Mr. Chen's artwork once the artwork has been "fixed," the subject matter of the agreement does fall within the Copyright Act.

Nonetheless, the Copyright Act does not automatically preempt state law solely because the Act applies to the general subject matter of the parties' Trademark Agreement.  Accordingly, the Court goes on to address whether the Copyright Act preempts the application of Florida law to Section 6.5 of the Trademark Agreement.

### 2. Preemption of Florida State Law

On the issue of preemption, the Copyright Act provides as follows:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . whether published or unpublished, *are governed exclusively by this title*.

9

17 U.S.C. § 301(a) (emphasis added).  Thus, "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."  Id. Yet, the Copyright Act does not affect state law rights regarding "subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression."  17 U.S.C. § 301(b)(1).

Preemption only occurs if the rights at issue "(1) fall within the subject matter of copyright set forth in sections 102 and 103 and (2) are equivalent to the exclusive rights of section 106."  Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C., 596 F.3d 1313, 1325 (11th Cir. 2010) (quoting Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983)) (quotations omitted).  Mr. Chen argues that the rights at issue in the parties' claims pertaining to Section 6.5 are not equivalent to the exclusive rights of § 106.

The exclusive rights under § 106 include the right to reproduce the copyrighted work, to prepare derivative works, to distribute copies to the public, and to display the copyrighted work publicly.  17 U.S.C. § 106; Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1311 (11th Cir. 2001) (citing § 106).  "Unless the complaint asserts a remedy expressly granted by the Copyright Act, such as damages for infringement, or requires interpretation of the Copyright Act, there is no [Copyright Act] federal jurisdiction." Reinhardt v. Wal-mart Stores, Inc., 547 F. Supp. 2d 346, 351 (S.D.N.Y. 2008).

Cayman does not purport to bring a claim for copyright infringement or to enforce any right to reproduce, distribute, or sell Mr. Chen's artwork.  Cayman has presented no evidence that it has registered for or obtained a copyright for any of Mr. Chen's artwork. Rather, Cayman seeks to enforce a contractual provision as part of a breach of contract

claim (Counterclaim Count V).  The parties' related declaratory judgment claims seek declarations regarding the validity and enforceability of the same contractual provision (Amended Complaint Count X, Counterclaim Count III).

To determine whether the rights asserted in a party's claims are equivalent to the exclusive rights under § 106 and therefore preempted under the Copyright Act, courts "employ an 'extra element' test such that 'if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created case [sic] of action, then the right does not lie within the general scope of copyright and there is no preemption.'" Utopia, 596 F.3d at 1326 (quoting Lipscher, 266 F.3d at 1311-12).  Under Eleventh Circuit precedent, a breach of contract claim meets the extra element test by virtue of the need to show the existence of a valid contract between the parties.  See Lipscher, 266 F.3d at 1318-19 (adopting the Seventh Circuit's reasoning in ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454-55 (7th Cir. 1996), that "claims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties.").  "If the promise [in a contract] amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted," Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 457 (6th Cir. 2001), as such claims amount to exclusive rights under § 106.  But a dispute as to the validity of a license agreement, such as the instant dispute, amounts to an "extra element" under Lipscher and Utopia.

Further, Cayman fails to identify any provision of the Copyright Act that governs the rights it seeks to enforce against Mr. Chen pursuant to Section 6.5.  These rights

are created solely by the parties' Trademark Agreement.  As such, the rights Cayman and Mr. Chen seek to enforce in the breach of contract claim and declaratory action claims regarding the validity and enforceability of Section 6.5 are not equivalent to § 106's exclusive rights, and are therefore not preempted under the Copyright Act. Accordingly, the Court goes on to evaluate Mr. Chen's defenses based on Florida Statutes § 542.335.

### 3. State Law Defenses to the Enforceability and Validity of Section 6.5

Mr. Chen argues that Section 6.5 is an unreasonable, illegal, and invalid restraint on trade in violation of Florida law.[5]  Pursuant to Florida Statutes § 542.335, Florida law allows "enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business."  Fla. Stat. § 542.335(1).  The statute also provides that "[a] person seeking enforcement of a restrictive covenant [] shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction."  Fla. Stat. § 542.335(1)(c).

Section 6.5 restricts Mr. Chen's work because it requires him to pay Cayman certain percentages of his income for the remainder of the 20-year license term if he elects to continue working as an artist after Cayman's dissolution.[6]  Accordingly, to

---

[5]  The Trademark Agreement provides that Florida Law governs the contract. Trademark Agmt. § 8.4.  Neither party contends otherwise.

[6]  The Court is not persuaded by Cayman's argument that § 542.335 does not apply to Section 6.5.  Cayman suggests that Section 6.5 is not a restrictive covenant because the section "was intended to serve as a reimbursement of Defendants' staggering investment of more than $1 Million to promote and sell Chen's work in the

enforce Section 6.5, Cayman bears the burden of demonstrating that the restrictions contained in the provision are reasonable in time, area, and line of business, and are justified by and reasonably necessary to protect a legitimate business interest.  <u>See</u> Fla. Stat. § 542.335(1).  Mr. Chen argues that Cayman has not met its burden to demonstrate (1) that the restrictions are justified by and reasonably necessary to protect a legitimate business interest or (2) that the restrictions are reasonable in time. Mr. Chen also contends (3) that Section 6.5 amounts to an impermissible penalty in violation of Florida's public policy.  The Court addresses each argument in turn.

<u>a. Business Interest</u>

Mr. Chen argues that Cayman has not shown that Section 6.5 is justified by or reasonably necessary to protect a legitimate business interest.  Section 542.335 provides that "[t]he term 'legitimate business interest' includes, but is not limited to" to the following:

1.    Trade secrets, as defined in § 688.002(4).

2.    Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

3.    Substantial relationships with specific prospective or existing customers, patients, or clients.

4.    Customer, patient, or client goodwill associated with: (a) An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; (b) A specific geographic location; or (c) A specific marketing or trade area.

---

event that Cayman Arts dissolved or was abandoned."  Cayman's Resp. at 11. However, the Trademark Agreement contains a merger clause, <u>see</u> Trademark Agmt. § 8.2, and Cayman has pointed to no language in the Trademark Agreement stating that Mr. Chen was obligated to repay any of Mr. Steele's investment.

5.    Extraordinary or specialized training.

Fla. Stat. § 542.335(1)(b).  In its Response to Mr. Chen's Motion, Cayman invokes category 1, stating "Cayman has a legitimate business interest in enforcing the restrictive covenant due to the existence of trade secrets such as confidential client lists and pricing information."  Cayman's Resp. at 13.  Mr. Chen suggests that Cayman cannot have any legitimate business interest in trade secrets because "the company notified Mr. Chen that, as of March 31, 2010, the company was abandoning its business and liquidating its existing inventory of Mr. Chen's works."  Chen's Mot. at 11. "In determining the enforceability of a restrictive covenant, a court . . . [m]ay consider as a defense the fact that the person seeking enforcement no longer continues in business in the area or line of business that is the subject of the action to enforce the restrictive covenant only if such discontinuance of business is not the result of a violation of the restriction."  Fla. Stat. § 542.335(1)(g)(2).  Cayman argues that this defense is unavailable here because Cayman "ceased operations as the result of Plaintiff's breach of the restriction," Cayman's Resp. at 13, but Mr. Chen could not possibly have breached Section 6.5 before Cayman ceased operations because the provision only comes into force "[i]n such case as Licensee decides that it shall abandon or dissolve Cayman Arts, Inc.," Trademark Agmt. § 6.5.  Cayman has not suggested any reason that its purported trade secrets remain a legitimate business interest following Cayman's dissolution, nor has it provided any other reason to enforce Section 6.5. Accordingly, as Cayman has not met its burden to show that Section 6.5 is justified by or reasonably necessary to protect a legitimate business interest, the Court finds that Section 6.5 is invalid and unenforceable under Florida Statutes § 542.335.

14

### b. Time

Even if Cayman had demonstrated a legitimate business interest, Cayman also has not demonstrated that the 20-year term for the license is a reasonable amount of time.  Section 542.335 describes certain rebuttable presumptions as guidance for courts seeking to determine the reasonableness in time of a restrictive covenant.  According to the statute, "In the case of a restrictive covenant sought to be enforced against a former employee . . . a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration."  Fla. Stat. § 542.335(1)(d)(1).  Mr. Chen therefore argues that the 20-year license term is unreasonable because any term over 2 years is presumptively unreasonable.  The Court agrees.

In support of the 20-year term, Cayman argues that the Copyright Act presumes that even a 35-year term is permissible.  See 17 U.S.C. § 204(a)(3) ("Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant.").  But as discussed above, the Court has already found the Copyright Act inapplicable to the issue of Section 6.5's validity and enforceability.  Regardless, the 20-year term applied to Section 6.5 does not relate to the termination of any copyright grant, but rather to the amount of time for which Mr. Chen must pay a percentage of his future income to Cayman.  Accordingly, Cayman has not met its burden to prove that the restrictions contained in Section 6.5 are reasonable in time.

Normally when a party fails to demonstrate that a restriction is reasonable in time, an appropriate remedy is for the Court to adjust the length of the restriction to a

15

reasonable time.  See, e.g., Fla. Stat. § 542.335(1)(c) ("If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.").  However, as discussed above, Cayman has failed to demonstrate a legitimate business interest justifying a restriction for any length of time, so the Court will not modify the length of the restraint.

c. Public Policy

Mr. Chen argues that Section 6.5 amounts to an impermissible penalty in violation of Florida's public policy.  Florida law does "not allow one party to hold a penalty provision over the head of the other party '*in terrorem*' to deter that party from breaching a promise," Burzee v. Park Avenue Ins. Agency, Inc., 946 So. 2d 1200, 1202 (Fla. Dist. Ct. App. 2006) (citations omitted), but this is not such a case.  Whereas the Burzee Court found that a liquidated damages clause for $10,000 plus all commissions for accounts from the last 24 months of employment was an invalid penalty provision, id. at 1201-02, the Trademark Agreement does not require Mr. Chen to pay any flat fee, and only requires him to pay a percentage of future income generated, see Trademark Agmt. § 6.5.  Further, distinct from the Florida cases that Mr. Chen cites to show that restrictive covenants where invalid when they required a former employee to pay 200% of fees or revenues, Coleman v. B.R. Chamberlain & Sons, Inc., 766 So. 2d 427 (Fla. Dist. Ct. App. 2000); Cherry, Bakaert & Holland v. LaSalle, 413 So. 2d 436 (Fla. Dist. Ct. App. 1982), Section 6.5 of the Trademark Agreement does not prohibit Mr. Chen from working with any previous client, nor does it require such an excessive payment

amount; rather Mr. Chen need only pay an amount starting at 50% of revenue and declining to 10% of revenue.  Finally, Section 6.5 is not disguised as a liquidated damages clause like the penalty provision in Burzee, 946 So. 2d at 1202-03; Section 6.5 is a provision designed to release Mr. Chen from the Trademark Agreement.  See Trademark Agmt. § 6.5 (Cayman "*shall release* [Mr. Chen] from the Trademark and License commitment . . . so long as prior to the end of the Term [Cayman] receives from [Mr. Chen] the following schedule of payments . . .").  Thus, the Court does not find that Section 6.5 rises to the level of an unenforceable penalty provision under Florida's public policy.  Regardless, as described above, Section 6.5 is invalid and unenforceable under Florida law for Cayman's failure to demonstrate a legitimate business interest.

Accordingly, Cayman's request for summary judgment on Counterclaim Count V based on Mr. Chen's breach of Section 6.5 is denied.  Mr. Chen's request for summary judgment in his favor on Cayman's Counterclaim Count III, which seeks a permanent injunction and a declaration "that the License is exclusive, worldwide, and applicable to all of Chen's past works, current works, and works in progress and future works, for a period of twenty (20) years from the date of the License," Countercl. at 12, is granted in part only to the extent that this count relates to Section 6.5 of the Trademark Agreement.  The Court makes no findings relating to any other issues that might be encompassed in this count because the parties have not argued those issues.  Mr. Chen's request for summary judgment on Amended Complaint Count X is granted in part, only to the extent that this count relates to Section 6.5 of the Trademark Agreement.  Specifically, Mr. Chen's Motion requests the following two declarations: (1)

"that the Trademark Agreement, including but not limited to the 20 year restriction contained therein, is invalid and unenforceable as an invalid restraint on trade," Chen's Mot. at 19, and (2) "that Cayman Arts and Steele have no ownership rights, licensing rights, copyrights or any other rights, with respect to Mr. Chen's artwork, merchandise, or other works and creations, prior to, during or subsequent to his resignation from Cayman Arts," id. Yet, Mr. Chen has not presented evidence or argument that the entire Trademark Agreement is invalid and unenforceable or that Cayman does not have certain rights regarding his work. The arguments contained in the parties' Motions and the accompanying briefing only address the validity and enforcement of Section 6.5. Thus, in granting Mr. Chen's request for summary judgment on Amended Complaint Count X, the Court will declare Section 6.5 of the Trademark Agreement invalid and unenforceable as a matter of law. However, the Court will not make any declarations as to the remainder of the Trademark Agreement at this time.

### B. Cayman's Use of its "Best Efforts" in Compliance with Section 7.1 (Amended Complaint Counts I, II, III, IV, and VII, Counterclaim Counts IV and V)

Mr. Chen seeks summary judgment on Amended Complaint Counts I, II, III, IV, and VII and on Counterclaim Counts IV and V based on the argument that all of his contractual obligations to Cayman have been discharged due to Cayman's own breach of Section 7.1 of the Trademark Agreement. Section 7.1 provides as follows:

> Both parties shall cooperate with each other and use their *best efforts* in connection with the distribution, sale and offering for sale of the Licensed Products in order to maximize sales of the Licensed Products . . . .

> In addition [], Licensee shall use its *best efforts* to promote and protect the Licensed Products, Trade Marks and Works (as defined in the Employment Agreement intended to be attached herewith) for the benefit of Licensee,

> Licensee's management and Licensor individually.  However, this obligation by Licensee shall not be construed as a guarantee, warranty or other absolute privilege or right.

Trademark Agmt. § 7.1 (emphasis added).  Further, Section 2.1 provides as follows:

> The Licensor hereby grants to Licensee an unlimited, exclusive license to use the Licensed Products, Trade Marks and Works in connection with the manufacture, design, development, marketing, advertisement, distribution, offering for sale, distribution and sale of the Licensed Products *and only so long as Licensee complies with all provisions in this Agreement*.

Id. § 2.1 (emphasis added).

Mr. Chen contends that Cayman's failure to use its best efforts relieves him of his contractual obligations under two theories.  First, Mr. Chen asserts that Section 7.1, read in light of Section 2.1, constitutes a condition precedent to his obligations.  Because "[i]t is an elementary rule that there must be at least a substantial performance o[f] conditions precedent in order to authorize a recovery as for performance of a contract," Goodwin v. Jacksonville Gas Corp., 302 F.2d 355, 361 (5th Cir. 1962), Mr. Chen contends that Cayman's failure to comply with Section 7.1 bars Cayman's ability to enforce any of its rights against Mr. Chen.  Second, Mr. Chen argues that Cayman's breach of Section 7.1 discharged him from any remaining contractual liability, including any obligation he may have had to make payments under Section 6.5, because "[w]hen a nonbreaching party to a contract is confronted with a breach by the other party, the nonbreaching party may stop performance, treating the breach as a discharge of its contractual liability," Toyota Tsusho Am., Inc. v Crittenden, 732 So. 2d 472, 477 (Fla. Dist. Ct. App. 1999).

Though Cayman disagrees that Section 7.1 is a condition precedent, Cayman does acknowledge that "[a]s with any best efforts clause, Cayman Arts was to use

commercially reasonable efforts to realize the success of the business endeavor." Cayman's Reply at 8.  The question for the Court under either of Mr. Chen's theories is therefore whether Cayman breached the "best efforts" provision.

Florida law recognizes that "[t]he definition of 'best efforts' may vary depending upon the factual circumstances surrounding the transaction and the intent of the parties in entering into the transaction."  First Nat'l Bank of Lake Park v. Gay, 694 So. 2d 784, 788 (Fla. Dist. Ct. App. 1997).  The parties disagree as to their intent in including the "best efforts" clause.  Cayman asserts that the "best efforts" clause was merely included as "a boilerplate term of contract language," Cayman's Reply at 7, while Mr. Chen declares that the "provision was an extremely critical and material term of the Trademark Agreement, and Mr. Chen would not have entered into the Agreement if Cayman Arts and Mr. Steele had refused to include it," Chen's Resp. at 12.

In his Response to Cayman's Motion and the attached Supplemental Declaration of Carey Chen [DE 151-1] ("Chen Supplemental Declaration"), Mr. Chen identifies a number of ways in which he contends that Cayman breached the "best efforts" provision.[7]  For instance, Mr. Chen declares that Cayman failed to complete a deal with

---

[7]  To the extent that Mr. Chen's Declaration identifies oral promises that Mr. Steele supposedly made outside of the parties' written Agreements, see, e.g., Chen Decl. ¶¶ 7, 8, such promises are improper evidence at the summary judgment stage. Pursuant to Federal Rule of Civil Procedure 56, a declaration used to oppose a summary judgment motion must set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4).  Under Florida's parol evidence rule,  when the parties intend a writing to incorporate their final and complete agreement, absent any exception, such as fraud or ambiguity, parol evidence is not admissible to vary the terms of the writing. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309-10 (11th Cir. 1998).  Section 8.2 of the Trademark Agreement is a merger clause, stating, "This Agreement contains the entire and only understanding of the Parties hereto." Trademark Agmt. § 8.2.  The parties have not alleged fraud, nor have they alleged

Wayne Brisbee of Z.G. Collections for an opportunity for Mr. Chen to illustrate manuscripts.  Chen Decl. ¶ 17.  Mr. Chen believes that the deal fell through due to Mr. Steele's "unreasonable and unrealistic demands."  Id. ¶ 18; see also id. ¶ 19.  Cayman also failed to complete a deal with Ocean World for Mr. Chen to paint a mural.  Id. ¶ 20. Mr. Chen once again attributes the deal's failure to Mr. Steele's unreasonable demands.  Id. ¶ 21.  Mr. Chen further alleges that Mr. Steele "caused Cayman Arts to make – and then breach – numerous promises and representations of services that it would provide to the Billfish Foundation, a very prominent and highly regarded marine conservation society."  Id. ¶ 22.  Mr. Chen also complains of Cayman's delay in securing an adequate headquarters space, failure to provide funds to purchase various supplies and materials, failure to hire proper staff, and failure to trademark Mr. Chen's name or copyright his artwork. See id. ¶¶ 14, 23, 24, 25.  Mr. Chen further notes, "In stark contrast to Mr. Chen's detailed Supplemental Declaration, Cayman Arts has not identified a shred of record evidence demonstrating that it remotely satisfied or preformed its contractual obligations to use its 'best efforts' for Mr. Chen's benefit." Chen's Resp. at 16.

In Cayman's Reply, it provides some of the evidence that Mr. Chen requests. Cayman points to its efforts, through Mr. Steele to "increase the notoriety, visibility, and fame of Chen and his artwork by taking him to fishing tournaments, shows and other

---

ambiguity.  Therefore, Mr. Chen's statements regarding Mr. Steele's oral promises outside of the written Agreements constitutes inadmissible parol evidence, and the Court will not consider these statements as undisputed facts in evaluating Cayman's Motion.  To the extent that Mr. Chen alleges facts for the purpose of demonstrating Cayman's failure to use its best efforts, however, the Court considers such allegations.

events, while Cayman [] exhibited or made appearances at many industry events, fishing tournaments or trade shows."  Steele Decl. ¶ 32; Resp. at 8.  Cayman spent hundreds of thousands of dollars on such promotional activities, including funding Mr. Chen's travel "to increase [his] fame and to promote and market the products of Cayman[]."  Steele Decl. ¶ 32.  Cayman writes, "the best evidence of Cayman Arts' unbridled best effort is the amount invested in Chen."  Resp. at 9 (citing Steele Decl. ¶ 19).  Cayman also points to its efforts, through Mr. Steele, "to counsel Chen to live up to his full artistic capacity and thereby increase his opportunity for success," Reply at 9, by encouraging Mr. Chen to vary his subjects, be more creative with detail, and create work including freshwater themes, id.; Declaration of Scott Steele in Support of Defendants' Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment [DE 152-2] ("Steele Declaration in Opposition") ¶¶ 4-5.  Cayman does not deny that it failed to complete the deal with Wayne Brisbee of Z.G. Collections or Ocean World, but instead states, "'best efforts' does not mean accepting every opportunity that arises." Resp. at 8.

In sum, Mr. Chen and Cayman agree that Cayman was required to use its "best efforts," but the parties disagree as to their intent in including the "best efforts" clause in their Trademark Agreement and the meaning of the term in this context.  Each party has presented evidence in accordance with its own idea of what the term means. "Where, as here, the interpretation of the term is in dispute, the question is properly for the jury." Gay, 694 So. 2d at 788.  The Court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  The Court finds

that there is a genuine issue for trial here.  Therefore, the Court will deny summary judgment on this basis.  Since Mr. Chen's request for summary judgment on Amended Complaint Counts I, II, III, IV, and VII and Counterclaim Counts IV and V is based solely on Cayman's alleged failure to use best efforts, summary judgment as to each of these counts will be denied.

## IV.  CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.    Plaintiff Carey Chen's Renewed Motion for Partial Summary Judgment [DE 140] is **GRANTED in part and DENIED in part** as follows:

    a.    The Motion is **GRANTED** as to Amended Complaint Count X and Counterclaim Count III to the extent that these counts relate to the validity and enforceability of Section 6.5 of the Trademark Agreement.  The Court hereby declares that Section 6.5 of the Trademark and Licensing Agreement is invalid and unenforceable as a matter of law.

    b.    The Motion is **DENIED** as to Amended Complaint Counts I, II, III, IV, and VII and Counterclaim Counts IV and V;

2.    Defendant/Counter-Plaintiff Cayman Arts, Inc.'s Motion for Partial Summary Judgment [DE 144] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 6th day of September, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF